1   DEBORAH A. SIVAS (CA Bar No. 135446)
    ALICIA E. THESING (CA Bar No. 211751)
2   ENVIRONMENTAL LAW CLINIC
    Mills Legal Clinic at Stanford Law School
3   Crown Quadrangle, 559 Nathan Abbott Way
    Stanford, California 94305-8610
4   Telephone:  (650) 725.8571
    Facsimile:  (650) 723.4426
5   dsivas@stanford.edu
    athesing@stanford.edu
6
    Attorneys for Plaintiffs WATERKEEPER
7   ALLIANCE, et al.

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10                    **(San Francisco Division)**

11  WATERKEEPER ALLIANCE, INC., et al.,    Case No. 3:15-cv-3927-MEJ

12          Plaintiffs,                    **NOTICE OF FURTHER SIXTH CIRCUIT
                                           PROCEEDINGS AND PLAINTIFFS'**
13          v.                             **UNOPPOSED REQUEST TO CONTINUE
                                           EXISTING STAY PENDING**
14  UNITED STATES ENVIRONMENTAL            **RESOLUTION OF JURISDICTIONAL
    PROTECTION AGENCY, et al.,             ISSUES IN SIXTH CIRCUIT COURT OF**
15                                         **APPEALS**
            Defendants.
16

17

18          On October 29, 2015, the Court entered an order temporarily staying all proceedings and

19  deadlines "pending the United States Court of Appeals for the Sixth Circuit's ruling on whether it

20  has exclusive jurisdiction" over the claims in this lawsuit.  ECF Doc. 12.  Pursuant to that order,

21  on February 25, 2016, Federal Defendants notified the Court that the Sixth Circuit issued a

22  decision on February 22, 2016 denying motions to dismiss that matter on jurisdictional grounds.

23  ECF Doc. 14.  On February 29, 2016 and March 3, 2016, petitioners in related Sixth Circuit Case

24  Nos. 15-3751 and 15-3831 filed Petitions for Rehearing En Banc, copies of which are attached

25  hereto.

26          Because the resolution of those Petitions for Rehearing may directly affect the course of

27  this case, Plaintiffs believe that a continuation of the existing stay until the Sixth Circuit fully

28  resolves the threshold subject matter jurisdiction issue will promote judicial economy and

1   efficiency and request that the Court issue the attached order to that effect.  Defendants have

2   indicated that they do not oppose Plaintiffs' request.

3   Dated:  March 8, 2016                    Respectfully submitted,

4                                            ENVIRONMENTAL LAW CLINIC
                                             Mills Legal Clinic at Stanford Law School
5
6                                            By:___/s/ Deborah A. Sivas_____
                                                  Deborah A. Sivas
7
                                             Attorneys for Plaintiffs
8

9                       ~~[PROPOSED]~~ ORDER CONTINUING STAY
10
11          For good cause shown, Plaintiffs' request to continue the stay of proceedings is hereby

    GRANTED.  All proceedings and deadlines in this action shall continue to be temporarily stayed
12
    pending resolution of the threshold subject matter jurisdiction issues by the United States Court of
13
    Appeals for the Sixth Circuit in the case captioned *In Re; Environmental Protection Agency and*
14
    *Department of Defense, Final Rule: Clean Water Rule: Definition of "Waters of the United*
15
    *States,"80 Fed. Reg. 37,054, published June 29, 2015 (MCP No. 135)*, Case No. 15-3751 and
16
    related cases.  Federal Defendants shall inform the Court when the subject matter jurisdiction
17
    proceedings pending before the Sixth Circuit are concluded.
18
            IT IS SO ORDERED.
19
20   Dated:_March 8, 2016____

21

22

23

24

25

26

27

28

NOTICE OF FURTHER SIXTH CIRCUIT PROCEEDINGS; PLAINTIFFS' UNOPPOSED REQUEST TO
CONTINUE EXISTING STAY PENDING RESOLUTION OF JURISDICTIONAL ISSUES IN SIXTH CIRCUIT

# ATTACHMENT 1

No. 15-3751 and related cases

*In the*

# United States Court of Appeals

*for the*

# Sixth Circuit

―――――――――――

IN RE: ENVIRONMENTAL PROTECTION AGENCY
AND DEPARTMENT OF DEFENSE,
FINAL RULE: CLEAN WATER RULE:
DEFINITION OF "WATERS OF THE UNITED STATES,"
80 Fed. Reg. 37,054, Published on June 29, 2015 (MCP No. 135)

―――――――――――

On Petitions for Review of a Final Rule
of the U.S. Environmental Protection Agency and the
United States Army Corps of Engineers

―――――――――――

**PETITION FOR REHEARING EN BANC
OF INTERVENORS THE NATIONAL ASSOCIATION OF
MANUFACTURERS (in Nos. 15-3751, 15-3799, 15-3817, 15-3820,
15-3822, 15-3823, 15-3831, 15-3837, 15-3839, 15-3850, 15-3853)
AND AMERICAN FARM BUREAU FEDERATION, ET AL.
(in Nos. 15-3817, 15-3820, 15-3837, 15-3839)**

―――――――――――

TIMOTHY S. BISHOP
MICHAEL B. KIMBERLY
E. BRANTLEY WEBB
*Mayer Brown LLP*
*1999 K Street NW*
*Washington, DC 20006*
*tbishop@mayerbrown.com*
*(202) 263-3000*

*Counsel for Petitioners*

## INTRODUCTION AND RULE 35(b)(1) STATEMENT

At issue are eight motions to dismiss, on jurisdictional grounds, twenty-two petitions for review of the "waters of the United States" Rule, one of the most consequential regulations ever promulgated under the Clean Water Act. The motions present a question of exceptional importance, not only to the progression of the petitions for review, but also for sixteen Administrative Procedures Act suits pending in district courts across the Nation. The question is whether 33 U.S.C. § 1369(b) vests exclusive jurisdiction in the courts of appeals to entertain petitioners' challenge to the Rule (as the federal government argues), or whether this challenge must be heard in the district court under Section 704 of the APA (as petitioners argue).[1]

Much hangs in the balance. It would be an enormous waste of party and judicial resources to litigate these petitions to judgment on the merits, if it later turns out that this Court lacked jurisdiction all along. And district courts throughout the country have (for the most part) held the APA cases in abeyance awaiting this Court's decision on jurisdiction. But the panel's

---

[1] Petitioners here are the American Farm Bureau Federation; American Forest & Paper Association; American Petroleum Institute; American Road & Transportation Builders Association; Greater Houston Builders Association; Leading Builders of America; Matagorda County Farm Bureau; National Alliance of Forest Owners; National Association of Home Builders; National Association of Manufacturers; National Association of Realtors; National Cattlemen's Beef Association; National Corn Growers Association; National Mining Association; National Pork Producers Council; National Stone, Sand, and Gravel Association; Public Lands Council; Texas Farm Bureau; and U.S. Poultry & Egg Association.

splintered 1-1-1 jurisdictional decision raises more questions than it answers, casting doubt and uncertainty on the future course of all of those cases.

At the heart of the confusion is *National Cotton Council v. EPA*, 553 F.3d 927 (6th Cir. 2009), where this Court held that Section 1369(b)(1)(F) provides for exclusive original jurisdiction in the courts of appeals to review rules "regulat[ing] . . . permitting procedures" under the Act. *Id.* at 933. The Eleventh Circuit, in *Friends of the Everglades v. EPA*, 699 F.3d 1280 (11th Cir. 2012), rejected that holding, dismissing *National Cotton* as "an opinion that provided no analysis of the [relevant] provision." *Id.* at 1288.

This split in the circuits is reflected in division among the panel. Judges Griffin and Keith agreed that, insofar as *National Cotton* is interpreted broadly to apply here, the case was wrongly decided. Both judges expressed the view that, as a matter of the CWA's plain text, jurisdiction over these rule challenges lies in the district courts. Yet while Judge Keith read *National Cotton* narrowly (and therefore dissented from the denial of dismissal), Judge Griffin believed that the holding of *National Cotton* is broad and binding here (and therefore concurred in the judgment). Even Judge McKeague, writing the lead opinion, acknowledged that the government's textual arguments are "not compelling" and that petitioners' arguments are "consonant with the plain language of § 1369(b)(1)." Slip op. 7, 16. In voting to deny the motions, Judge McKeague set text aside in favor of a "functional approach rather than a technical approach," which he thought mandated by precedent. *Id.* at 16.

2

This case thus cries out for en banc review: there is a "circuit split," the question presented is "an important federal question," and a "number of judges on the court have come to doubt the validity of [its] own precedent." *Mitts v. Bagley*, 626 F.3d 366, 370 (6th Cir. 2010) (Sutton, J., concurring in denial of rehr'g en banc). Without guidance from the full Court, moreover, district courts across the country will be left uncertain of whether they should proceed to the merits of the APA rule challenges filed before them. The result, unless this Court intervenes, will be a procedural morass that will waste substantial judicial and party resources.

Because the jurisdictional question implicates a wide body of precedent interpreting a complex statutory scheme, petitioners (who anticipate that additional petitions for en banc review will be filed by other movants) request full re-briefing of, and en banc oral argument on, the question presented.

## BACKGROUND

***Statutory background.*** The regulation at issue in these cases (the Rule) purports to "clarify" the Agencies' definition of "waters of the United States" within the meaning of the CWA—that is, it purports to clarify the scope of the agencies' regulatory jurisdiction under the Act. The question presented by the motions to dismiss is whether 33 U.S.C. § 1369(b)(1) vests exclusive original jurisdiction in the courts of appeals to entertain petitioners' challenges to the Rule, or if these challenges must instead be heard in district courts under the APA.

3

Section 1369(b)(1) establishes a scheme of judicial review for certain categories of agency action under the CWA. In particular, Congress conferred original jurisdiction on courts of appeals to review agency action "(E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title" and "(F) in issuing or denying any permit under section 1342 of this title." Congress also provided a mechanism to consolidate petitions challenging the same EPA action in a single circuit (28 U.S.C. § 2112(a)), ensuring an authoritative determination of the validity of EPA action that falls within the defined categories.

Separately, the Administrative Procedure Act provides that a person "adversely affected or aggrieved by agency action" may bring suit in district court for judicial review of any "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. §§ 702, 704. Thus, when judicial review of a final agency action under the CWA is not available in the courts of appeals under 33 U.S.C. § 1369(b)(1), the APA provides a cause of action in district court under 5 U.S.C. §§ 702, 704 and 28 U.S.C. § 1331.

***Procedural background.*** Following promulgation of the Rule, public and private parties filed sixteen APA challenges in thirteen federal district courts throughout the country. Petitioners here joined in a single action challenging the Rule in the U.S. District Court for the Southern District of Texas. In that suit, they seek a declaration that (1) the agencies' actions violated the procedural requirements of the APA, (2) the Rule departs from

4

the plain text and clear structure of the CWA, and (3) the Rule violates the Commerce and Due Process Clauses of the U.S. Constitution.

Motions for preliminary injunctions against enforcement of the Rule were considered by three district courts, in *North Dakota v. EPA*, No. 3:15-cv-59 (D.N.D.), *Murray Energy Corp v. EPA*, No. 1:15-cv-110 (N.D. W. Va.), and *Georgia v. McCarthy*, No. 2:15-cv-79 (S.D. Ga.). The district court in the North Dakota action held that Section 1369(b)(1) is inapplicable and that it therefore has jurisdiction to hear the action, and it entered a preliminary injunction. Order, No. 3:15-cv-59 (D.N.D. Aug. 27, 2015) (Dkt. 70). The district courts in *Georgia* and *Murray Energy*, dismissed the actions for want of jurisdiction, reasoning that jurisdiction lies in the courts of appeals.[2]

2. Meanwhile, various parties—including all petitioners here except the National Association of Manufacturers (NAM)—filed twenty-two protective petitions for review in various courts of appeals under Section 1369(b)(1). Those petitions were later all transferred to this Court.

Petitioners here intervened in the first eleven petitions for review transferred to this Court and moved as respondents to dismiss each for lack of subject matter jurisdiction. We argued, in particular, that the Rule is neither a rule "approving or promulgating any effluent limitation or other

---

[2]  Plaintiffs in the *Georgia* case noticed an appeal in the Eleventh Circuit, which ordered briefing on the jurisdictional question. *Georgia v. McCarthy*, No. 15-14035 (11th Cir.). That appeal remains pending.

limitation" within the meaning of Section 1369(b)(1)(E) nor a rule "issuing or denying any permit" within the meaning of 1369(b)(1)(F).

3.a.    The panel denied the motion to dismiss in a fractured 1-1-1 decision. "[T]he court's authority to conduct direct review of the Agencies' challenged action," Judge McKeague explained in the lead opinion, "must be found, if at all," in 33 U.S.C. § 1369(b)(1)(E) and (F), which "are the only two provisions of § 1369(b)(1) that potentially apply." Slip op. 5-6.

As to subsection (E), Judge McKeague admitted that the government's textual arguments are "not compelling." *Id*. at 7. He ultimately concluded that jurisdiction lies in the court of appeals under subsection (E) not because statutory text requires it, but (in his view) because the Supreme Court's decision in *E.I. du Pont de Nemours Co. v. Train*, 430 U.S. 112 (1977), does. That case, according to Judge McKeague, "eschewed a strict, literal reading" of Section 1369(b)(1) and "license[d]" a "more generou[s]" interpretation "than [the statute's] language would [otherwise] indicate." Slip Op. 7, 9. "Viewing the [Rule] through the lens created in *E.I. du Pont*," Judge McKeague concluded, "reveals a regulation whose practical effect will be to *indirectly* produce various limitations"; thus, "although the Rule does not itself impose any limitation," it is subject to circuit court review under subsection (E) as though it did. *Id*. at 11.

Judge McKeague found jurisdiction under subsection (F) as well, relying on *National Cotton*, which he described as holding that "subsection (F)

authorizes direct circuit court review not only of actions issuing or denying particular permits, but also of regulations governing the issuance of permits" and "'relating to permitting.'" Slip op. 12-13. Because the Rule "expands regulatory authority and impacts the granting and denying of permits," Judge McKeague concluded that it falls within subsection (F). Slip op. 14. No other judge joined Judge McKeague's opinion in either respect.

b. Judge Griffin concurred in judgment only. His reluctance to deny the motions to dismiss could not have been clearer: "[W]hile I agree that *National Cotton* controls this court's conclusion, I disagree that it was correctly decided. But for *National Cotton*, I would find jurisdiction lacking." Slip op. 27.

Beginning with subsection (E), Judge Griffin concluded that the "plain and unambiguous text . . . makes clear that this court does not have jurisdiction under subsection (E) to hear a challenge to a regulation that does not impose any limitation as set forth by the Act." Slip op. 23. Judge Griffin noted that the agencies "have not promulgated an effluent limitation," and he "decline[d] to read *E.I. du Pont*" as "shoehorning an exercise in jurisdictional line-drawing into subsection (E)'s 'other limitation' provision." *Id.* at 24.

Concerning subsection (F), Judge Griffin recounted the statutory text and relevant Supreme Court precedents and concluded that the subsection "simply does not apply here." Slip op. 28. He nevertheless concurred in the judgment because "*National Cotton* dictates [the] conclusion" that subsection (F) encompasses the Rule; indeed, under *National Cotton*, subsection (F)'s

7

"jurisdictional reach . . . has no end" at all. *Id.* at 29. "Although, in [his] view, the holding in *National Cotton* is incorrect," Judge Griffin concluded that "[the] panel [was] without authority to overrule it." Slip op. 30.

c.  Judge Keith dissented. He "agree[d] with Judge Griffin's reasoning and conclusion that, under the plain meaning of the statute, neither subsection (E) nor subsection (F) . . . confers original jurisdiction on the appellate courts." Slip op. 32. But unlike Judge Griffin, Judge Keith declined "to read *National Cotton* in a way that expands the jurisdictional reach of subsection (F) in an all-encompassing, limitless fashion." Slip op. 32. In the belief that "*National Cotton*'s holding is not as elastic as the concurrence suggests" and should not be read to authorize "original subject-matter jurisdiction over all things related to the [CWA]," Judge Keith would have granted the motions.

## REASONS FOR GRANTING REHEARING

Few cases present such compelling reasons for en banc review. Judges Griffin and Keith both expressed the view that *National Cotton*—given Judge McKeague's and Griffin's broad reading—is inconsistent with the CWA's plain text. Thus both judges believed that the statute calls for dismissal of the petitions. They further acknowledged that the broad reading of *National Cotton* is at odds with the Eleventh Circuit's decision in *Friends of the Everglades*. And there is no denying that the question presented is one of immense practical importance—the future of twenty-two petitions for review and sixteen district-court suits challenging one of the most consequential

regulations ever promulgated under the CWA hangs in the balance.

## A. The Court should grant en banc rehearing to overrule *National Cotton*'s jurisdictional holding

En banc rehearing is warranted because *National Cotton*—this Circuit's leading case on Section 1369(b)(1) and the decision that the lead and concurring opinions found dispositive—conflicts with the Eleventh Circuit's decision in *Friends of the Everglades* and was wrongly decided.

### 1. *National Cotton* conflicts with the Eleventh Circuit's decision in *Friends of the Everglades*

There is little question that if the petitions for review had been consolidated in the Eleventh Circuit, they would have been dismissed for lack of jurisdiction under *Friends of the Everglades*. That case involved a challenge to EPA's Water Transfers Rule, which provides that a transfer of pollutants from one regulated body of water to another does not constitute an "addition" of a pollutant to "the waters of the United States." 699 F.3d at 1284. In its opposition to motions to dismiss for lack of jurisdiction in that case, the government argued (as it has here) that the petitions for review were properly before the court of appeals under Section 1369(b)(1)(E) and (F).

The Eleventh Circuit disagreed. It quickly rejected jurisdiction under subsection (E) because the Water Transfers Rule "is neither an effluent limitation" that "restrict[s] pollutants" nor an "other limitation" on regulators or regulated entities. 699 F.3d at 1286. It likewise rejected jurisdiction under subsection (F) because "[t]he water-transfer rule neither issues nor denies a

permit," nor does it have "'the precise effect'" of doing so. *Id*. at 1287. In reaching that conclusion, the Eleventh Circuit rejected the notion that sub-section (F) covers all "regulations relating to permitting." *Id*. The court recognized that although this Court, in *National Cotton*, had "adopted the [broad] interpretation advanced by [EPA], it did so in an opinion that provid-ed no analysis of the [the statutory language]." *Id*. at 1288. The Eleventh Circuit thus found *National Cotton* unpersuasive and dismissed the petitions for review for lack of jurisdiction. *Id*. In seeking further review before the Supreme Court, the government acknowledged that *Friends* "conflicts with the Sixth Circuit's decision in *National Cotton Council*." U.S. Pet'n 18, S. Ct. No. 13-10, 2013 WL 3338729 (U.S. June 28, 2013). This Court can and should resolve the conflict by convening en banc.

### 2. *National Cotton*'s jurisdictional holding should be overruled

We agree with Judge Keith that *National Cotton* is best read narrowly, and that it does not dictate the outcome of this case. But Judges McKeague and Griffin (and the government and Eleventh Circuit) all disagree, reading *National Cotton* broadly to confer exclusive original jurisdiction on the courts of appeals over challenges to any regulations "relating to" the agencies' permitting process under the Clean Water Act. To the extent that *National Cotton* is interpreted that way, it should be overruled.

Subsection (F) grants the courts of appeals original jurisdiction in cases

involving the "issuing or denying [of] any permit under section 1342 of this title." 33 U.S.C. § 1369(b)(1)(F). In *Crown Simpson Pulp v. Costle Co.*, 445 U.S. 193 (1980), the Supreme Court held that paragraph (F) covers not only literal grants and denials of permits by the agencies, but also agency actions that have the "precise effect" of accomplishing those ends. *Id.* at 196. At issue in that case was "EPA's veto of a state-issued permit," which the Court held to be the functional equivalent of a permit denial and thus reviewable in the court of appeals under paragraph (F). *Id.*

None of that supports jurisdiction here. The agencies' definition of "waters of the United States" does not grant or deny a permit. EPA Administrator Gina McCarthy has admitted as much: "[T]he Clean Water Rule is a jurisdictional rule. It doesn't result in automatic permit decisions." *The Fiscal Year 2016 EPA Budget: Joint Hearing Before the Subcomm. on Energy & Power and the Subcomm. on Env't & Econ. of the H. Comm. on Energy & Commerce*, 114th Cong. 70 (Feb. 25, 2015).

Judges McKeague and Griffin nevertheless found that *National Cotton* interprets subsection (F) to cover challenges not only to the grant or denial of a permit, but also to regulations that indirectly relate to the CWA permitting process by defining those waters for discharges to which permits will be required. That reading of subsection (F) might have some force if Congress had written a different statute—if it had drafted it to apply to, say, EPA actions "affecting when permits are required." But it cannot be squared with

11

the statute that Congress *actually* wrote, which applies to agency actions that have the *precise effect* of "issuing or denying any permit under section 1342 of this title." 33 U.S.C. § 1369(b)(1)(F). *See Costle*, 445 U.S. at 196. The Rule here has no such effect; it merely defines the agencies' jurisdiction.

The broad reading of *National Cotton* also runs headlong into the *expressio unius est exclusio alterius* canon, which provides that the expression of one thing implies the exclusion of another. Section 1369(b)(1) meticulously catalogues seven narrow categories of agency actions subject to review in the courts of appeals. Under the *expressio unius* maxim, the careful selection of those seven, spare categories "justif[ies] the inference" that a general grant of court-of-appeals jurisdiction over all agency decisionmaking was "excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (citing *United States v. Vonn*, 535 U.S. 55, 65 (2002)).

That conclusion takes on particular force when taken alongside other statutes demonstrating that, when Congress wishes to confer broad jurisdiction on the courts of appeals to hear petitions for review challenging general agency rulemaking, it does so expressly. Congress took that approach in the CWA's cousin statute, the Clean Air Act. There, it provided for original jurisdiction in courts of appeals over challenges not only to particular agency actions, but to "any other nationally applicable regulations promulgated, or final action taken, by the Administrator" under the act. 42 U.S.C. § 7607-(b)(1). That is compelling evidence that Congress knows how to "ma[ke]

12

express provisions" for expansive original jurisdiction in the courts of appeals when it wants to, and that its "omission of the same [language]" from Section 1369(b)(1) "was purposeful." *Zadvydas v. Davis*, 533 U.S. 678, 708 (2001).

In sum, insofar as *National Cotton* is properly read as authorizing jurisdiction over the petitions for review in this case, it is inconsistent with the plain text of Section 1369(b)(1)(F) and should be overruled.[3]

## B. Immediate en banc review of the jurisdictional question is imperative and cannot await a decision on the merits

It is sufficient for en banc rehearing that the panel's fractured decision implicates an important question that has divided the circuits, and that two panel judges questioned the correctness of this Court's precedent. But the need for en banc review is all the more pressing in light of the confusion and disruption that will result if the panel decision is allowed to stand.

To begin with, district courts throughout the country have been holding over one dozen of petitioners' APA suits in abeyance while this Court addresses the jurisdictional question. As we have explained, if jurisdiction properly

---

[3]   It is no answer to say that jurisdiction is proper under subsection (E). Only Judge McKeague believed that to be the case, based on his reading of *E.I. du Pont*. But as Judge Griffin explained, under the *noscitur a sociis* canon, the words "'any effluent limitation or other limitation' must be related to the statutory boundaries set forth in §§ 1311, 1312, 1316, and 1345," and the Rule "does not emanate from these sections." Slip op. 21. As for *E.I. du Pont*, it is "a far stretch to take . . . dicta" from that case to elevate policy arguments over textual ones. *Id.* at 24. Even supposing that the holding in *E.I. du Pont* did permit reasoning from "policy considerations," that would be no justification for employing "a watered down version of textualism in this case," which involves different challenges to a different regulation. *Id.*

lies in this Court under Section 1369(b)(1), then it necessarily does *not* lie in the district courts under the APA. Yet the panel decision has sent the worst kind of mixed message. On the one hand, the panel has denied the motions to dismiss and retained jurisdiction for itself under Section 1369(b)(1). On the other hand, a majority of the panel *disagreed* with that outcome, which was ostensibly dictated by *National Cotton*. In the district courts outside the Sixth Circuit, which are not bound to follow *National Cotton*, there are certain to be disputes about whether the panel decision should be understood as supporting or undercutting jurisdiction of the APA suits in the district courts.

Concern for judicial economy also weighs in favor of immediate reconsideration of the panel's opinion before the Court reaches the merits of the petitions for review. The Court has before it over 60 parties, including 25 States and the District of Columbia, two federal agencies and their heads, scores of industry petitioners, and a multitude of environmental NGOs. Each of these categories of parties have unique interests, and within each group, individual parties are likely to take different perspectives. As the ongoing litigation in the U.S. District Court for the District of North Dakota demonstrates, the disputes among the parties will not be limited to disagreements on broad legal principles. It is nearly certain to involve evidentiary disputes and other hotly-contested motions practice that will consume substantial judicial resources to manage and resolve.

Beyond that, the likelihood that the panel's denial of the motions to dismiss will eventually be overturned is—judging by the panel's splintered decision—quite high. It would not be a wise use of party or judicial resources to litigate the merits in this Court now, given the substantial risk that a judgment on the merits will later be vacated for want of jurisdiction, sending everyone down to start over from scratch before the district courts. In these circumstances, "immediate rather than delayed review" of the jurisdictional question "would be the best way to avoid 'the mischief of economic waste and of delayed justice.'" *Cox Broad. v. Cohn*, 420 U.S. 469, 477-478 (1975).

Finally, it bears mention that the interlocutory posture of the case poses no obstacle. No future developments "would foreclose or make unnecessary decision on the [jurisdictional] question." *Cox Broad.*, 420 U.S. at 480. *See, e.g.*, *Foti v. INS*, 308 F.2d 779 (2d Cir. 1962) (en banc) (reversing on en banc rehearing, and after a merits judgment, a 2-1 panel ruling that the court of appeals had original jurisdiction), rev'd 84 S. Ct. 306 (1963).[4]

## CONCLUSION

The petition for rehearing en banc should be granted and full rebriefing and oral argument should be ordered.

---

[4] Rule 35(a) provides that any "appeal or other proceeding" may be reheard en banc. IOP 35(g) and (h) specify that petitions for en banc review of non-final orders "will be circulated only to the panel judges" in and "treated in the same manner as a petition for panel rehearing." Any member of the panel may request an en banc poll from the full Court. IOP 35(d)(3), (e). The Court may wish to await other en banc filings before acting on the petition.

Dated: February 29, 2016      Respectfully submitted,

*/s/ Timothy Bishop*
TIMOTHY S. BISHOP
MICHAEL B. KIMBERLY
E. BRANTLEY WEBB
   *Mayer Brown LLP*
   *1999 K Street NW*
   *Washington, DC 20006*
   *tbishop@mayerbrown.com*
   *(202) 263-3000*

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing petition with the Clerk of the Court using the appellate CM/ECF system on February 29, 2016. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished via CM/ECF.


*/s/ Timothy Bishop*

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0045p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

In re: UNITED STATES DEPARTMENT OF DEFENSE AND UNITED STATES ENVIRONMENTAL PROTECTION AGENCY FINAL RULE: CLEAN WATER RULE: DEFINITION OF "WATERS OF THE UNITED SATES," 80 FED. REG. 37,054 (JUNE 29, 2015).

———————————————————————

MURRAY ENERGY CORPORATION (15-3751); STATE OF OHIO, et al. (15-3799); NATIONAL WILDLIFE FEDERATION (15-3817); NATURAL RESOURCES DEFENSE COUNCIL, INC. (15-3820); STATE OF OKLAHOMA (15-3822); CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, et al. (15-3823); STATE OF NORTH DAKOTA, et al. (15-3831); WATERKEEPER ALLIANCE INC., et al. (15-3837); PUGET SOUNDKEEPER ALLIANCE, et al. (15-3839); AMERICAN FARM BUREAU FEDERATION, et al. (15-3850); STATE OF TEXAS, et al. (15-3853); UTILITY WATER ACT GROUP (15-3858); SOUTHEASTERN LEGAL FOUNDATION, INC., et al. (15-3885); STATE OF GEORGIA, et al. (15-3887); ONE HUNDRED MILES, et al. (15-3948); SOUTHEAST STORMWATER ASSOCIATION, INC., et al. (15-4159); MICHIGAN FARM BUREAU (15-4162); WASHINGTON CATTLEMEN'S ASSOCIATION (15-4188); ASSOCIATION OF AMERICAN RAILROADS, et al. (15-4211); TEXAS ALLIANCE FOR RESPONSIBLE GROWTH, ENVIRONMENT, AND TRANSPORTATION (15-4234); AMERICAN EXPLORATION & MINING ASSOCIATION (15-4305); ARIZONA MINING ASSOCIATION, et al. (15-4404),

*Petitioners*,

*v.*

UNITED STATES DEPARTMENT OF DEFENSE, DEPARTMENT OF THE ARMY CORPS OF ENGINEERS and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

Nos. 15-3751 /3799/ 3817/ 3820/ 3822/ 3823/ 3831/ 3837/ 3839/ 3850/ 3853/ 3858/ 3885/ 3887/ 3948/ 4159/ 4162/ 4188/ 4211/ 4234/ 4305/ 4404

1

On Petitions for Review of Final Rule of the United States Department
of Defense and United States Environmental Protection Agency.

Judicial Panel on Multi-District Litigation, No. 135.

Argued:  December 8, 2015

Decided and Filed:  February 22, 2016

Before:  KEITH, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Eric E. Murphy, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Petitioners.  Martha C. Mann, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondents.

McKEAGUE, J., delivered the opinion in which GRIFFIN, J., joined in the result. GRIFFIN, J. (pp 19–31), delivered a separate opinion concurring in the judgment.  KEITH, J. (pp. 32–33), delivered a separate dissenting opinion.

_____

**OPINION**

_____

McKEAGUE, Circuit Judge.  This multi-circuit case consists of numerous consolidated petitions challenging the validity of the "Clean Water Rule" recently published by the U.S. Army Corps of Engineers and U.S. Environmental Protection Agency ("the Agencies").  The Clean Water Rule is intended to clarify the scope of "the waters of the United States" subject to protection under the Clean Water Act.  The Act provides that certain specified actions of the EPA Administrator are reviewable directly in the U.S. Circuit Courts of Appeals.  Because of uncertainty about whether the Agencies' adoption of the Clean Water Rule is among these specified actions, parties challenging the Rule have filed petitions in both district courts and circuit courts across the country.  Many of the petitions have been transferred to the Sixth Circuit for consolidation in this action.  Many of the petitioners and other parties now move to dismiss the very petitions they filed invoking this court's jurisdiction, contending this court lacks jurisdiction to review the Clean Water Rule.

The movants find support for their position in the language of the Clean Water Act's judicial review provisions, which purport to define circuit court jurisdiction specifically and narrowly. Over the last 35 years, however, courts, including the Supreme Court and the Sixth Circuit, have favored a "functional" approach over a "formalistic" one in construing these provisions. These precedents support the Agencies' position that this court does have jurisdiction. The district courts that have confronted the jurisdictional question in this litigation have arrived at conflicting answers.[1] For the reasons that follow I conclude that Congress's manifest purposes are best fulfilled by our exercise of jurisdiction to review the instant petitions for review of the Clean Water Rule.

## I. BACKGROUND

Petitioners in these various actions, transferred to and consolidated in this court by the Judicial Panel on Multi-District Litigation for handling as a multi-circuit case, challenge the validity of a Final Rule adopted by respondents U.S. Army Corps of Engineers and U.S. Environmental Protection Agency, "the Clean Water Rule." 80 Fed. Reg. 37,054 (June 29, 2015). The Clean Water Rule clarifies the definition of "waters of the United States," as used in the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "through increased use of bright-line boundaries" to make "the process of identifying waters protected under the Clean Water Act easier to understand, more predictable and consistent with the law and peer reviewed science, while protecting the streams and wetlands that form the foundation of our nation's water resources." 80 Fed. Reg. at 37,055. Petitioners contend that the definitional changes effect an expansion of respondent Agencies' regulatory jurisdiction and dramatically alter the existing balance of federal-state collaboration in restoring and maintaining the integrity of the nation's waters. Petitioners also contend the new bright-line boundaries used to determine which tributaries and waters adjacent to navigable waters have a "significant nexus" to waters protected under the Act are not consistent with the law as defined by the Supreme Court, and were adopted by a process not in conformity with the rulemaking requirements of the Administrative Procedures Act

---

[1] *See Murray Energy Corp. v. U.S. E.P.A.*, 2015 WL 5062506 (N.D. W.Va. Aug. 26, 2015) (holding jurisdiction lies in circuit court); *State of Georgia v. McCarthy*, 2015 WL 5092568 at *2–3 (S.D. Ga. Aug. 27, 2015) (same); *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *2 (D. N.D. Aug. 27, 2015) (holding jurisdiction lies in district court).

("APA"). The Agencies maintain that the requirements of the APA were met and that the Rule is a proper exercise of their authority under the Clean Water Act.

The Rule became effective on August 28, 2015. On October 9, 2015, however, we issued a nationwide stay of the Rule pending further proceedings in this action. *In re EPA and Dep't of Def. Final Rule,* 803 F.3d 804 (6th Cir. 2015). We found that petitioners had demonstrated a substantial possibility of success on the merits of their claims and that the balance of harms militated in favor of preserving the status quo pending judicial review.

Meanwhile, eight motions to dismiss have been filed by numerous petitioners and intervenors. The motions assert that judicial review is properly had in the district courts, not here. They contend the instant challenges to the Clean Water Rule do not come within the judicial review provisions of the Clean Water Act, 33 U.S.C. § 1369(b)(1).

Section 1369(b)(1) identifies seven kinds of action by the EPA Administrator that are reviewable directly in the circuit courts. Only two of the seven kinds of action listed in § 1369(b)(1) are implicated here, subsections (E) and (F). In its entirety, § 1369(b)(1) provides as follows:

(1) Review of the Administrator's action

(A) in promulgating any standard of performance under section 1316 of this title,

(B) in making any determination pursuant to section 1316(b)(1)(C) of this title,

(C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title,

(D) in making any determination as to a State permit program submitted under section 1342(b) of this title,

(E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title,

(F) in issuing or denying any permit under section 1342 of this title, and

(G) in promulgating any individual control strategy under section 1314(l) of this title,

may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

> Any such application shall be made within 120 days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such 120th day.

33 U.S.C. § 1369(b)(1).

Movants contend the EPA's and the Corps' adoption and promulgation of the Clean Water Rule is not action of the Administrator "in issuing or promulgating any effluent limitation or other limitation" or "in issuing or denying any permit" under § 1369(b)(1)(E) or (F).  They contend the Clean Water Rule is simply a definitional rule and that neither the statutory language nor the legislative history evidences congressional intent to authorize direct review of such action in the circuit courts.

## II.  ANALYSIS

### A.  General Standards

The question of subject matter jurisdiction is a question of law the court addresses de novo.  *Iowa League of Cities v. U.S. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013).  That is, the Agencies' interpretation of the Clean Water Act is entitled to no deference in this regard.  *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1285 (11th Cir. 2012).

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only as authorized by the Constitution and by Congress.  *Id.* at 1289.  Here, the court's authority to conduct direct review of the Agencies' challenged action, must be found, if at all, in the Clean Water Act, 33 U.S.C. § 1369(b)(1).  *Id.* at 1285 (recognizing availability of direct circuit court review only over those actions specifically enumerated in § 1369(b)(1)).  Not all actions taken under the Clean Water Act are directly reviewable in the circuit courts.  *Nat'l Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009).  Where review is available under § 1369(b)(1), "it is the exclusive means of challenging actions covered by the statute."  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1334 (2013).  Matters not reviewable under § 1369(b)(1) may be actionable in the district courts by other means.  *See id.* (recognizing availability of private enforcement action under 33 U.S.C. § 1365); *Narragansett Elec. Co. v. U.S. E.P.A.*, 407

F.3d 1, 8 (1st Cir. 2005) (recognizing availability of judicial review in district court under the APA).

Whether subject matter jurisdiction lies in the circuit courts is governed by the intent of Congress. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 746 (1985). In determining the scope of circuit court jurisdiction Congress intended to prescribe under the Clean Water Act, the analysis must begin with the statutory language. *Id.* at 735. Yet, even where statutory language may seem unambiguous, "plain meaning, like beauty, is sometimes in the eye of the beholder." *Id.* at 737. The parties agree that subsections (E) and (F) are the only two provisions of § 1369(b)(1) that potentially apply.

**B. Statutory Language**

**1. *Subsection (E) – "Other Limitation"***

Movants contend the Rule's definition of "waters of the United States" is not, under § 1369(b)(1)(E), "an effluent limitation or other limitation" approved or promulgated under 33 U.S.C. § 1311, 1312, 1316, or 1345. "Effluent limitation" is defined as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance." 33 U.S.C. § 1362(11).

The Agencies do not contend that the Clean Water Rule is an action in approving or promulgating an effluent limitation, but rather that it is an "other limitation." The Act does not define "other limitation." Inasmuch as "effluent limitation" is defined as a "restriction" on discharges from point sources, the Agencies contend "other limitation" must be understood as a different kind of "restriction." They contend the Rule's clarification of the scope of "waters of the United States" protected under the Clean Water Act constitutes an "other limitation" in two respects. First, it has the effect of restricting the actions of property owners who discharge pollutants from a point source into covered waters. Second, it has the effect of imposing limitations or restrictions on regulatory bodies charged with responsibility for issuing permits

Case 3:15-cv-03927-MED Document 5416 Filed 03/08/16 Page 28 of 128

Nos. 15-3751, et al.    *In re: U.S. Dep't of Defense & U.S. Envtl. Protection Agency Final*    Page 7
                        *Rule: Clean Water Rule*

under the National Pollutant Discharge Elimination System ("NPDES") to those who discharge pollutants into covered waters.

On its face, the Agencies' argument is not compelling.  After all, the Rule's clarified definition is not self-executing.  By clarifying the definition, the Agencies did not approve or promulgate any limitation that imposes *ipso facto* any restriction or requirement on point source operators or permit issuers.  Rather, they promulgated a definitional rule that, operating in conjunction with other regulations, will result in imposition of such limitations.  Is such an indirect consequence sufficient to bring the Rule within the scope of § 1369(b)(1)(E)?

The Agencies say yes and cite several cases in support.  The seminal case supporting their construction of subsection (E) is *E.I. du Pont de Nemours Co. v. Train*, 430 U.S. 112, 136 (1977), where the Supreme Court eschewed a strict, literal reading.  The Court characterized a construction that would provide for direct circuit court review of individual actions issuing or denying permits, but disallowed such review of the "basic regulations governing those individual actions," as a "truly perverse situation."  *Id.*  Hence, even though § 1369(b)(1) provided for circuit court review only of limitations promulgated under certain enumerated sections, and the challenged regulation was promulgated under a different section—which was, however, closely related to one of the enumerated sections—the Court had "no doubt that Congress intended review of the two sets of regulations to be had in the same forum."  *Id.* at 136–37.  The Court thus construed § 1369(b)(1)(E), in light of Congress's manifest intent, to encompass review of more agency actions than a literal reading of the provision would suggest.

*E.I. du Pont* can be read in more ways than one.  As the Agencies see it, the Clean Water Rule is a "basic regulation governing those individual actions" taken by the EPA Administrator (e.g., promulgation of limitations) that *are* subject to direct circuit court review.  Accordingly, giving § 1369(b)(1) a practical construction per *E.I. du Pont*, the Agencies argue that Congress intended the lawfulness of the Clean Water Rule to be subject to direct circuit court review.

Their position finds support in several decisions of our sister circuits.  In *Nat. Res. Def. Council v. U.S. E.P.A.*, 673 F.2d 400  (D.C. Cir. 1982) (J. Ginsburg), a case closely analogous to ours, the D.C. Circuit addressed numerous consolidated challenges to EPA regulations that had

been filed in circuit courts of appeals and district courts.  The regulations did not establish any numerical limitations, but prescribed permitting procedures that constituted "a limitation on point sources and permit issuers and a restriction on the untrammeled discretion of the industry."  *Id.* at 405 (internal quotation marks omitted).  Following *E.I. du Pont*, the court held this "limitation" was sufficient to bring the regulations within the ambit of direct circuit court review under § 1369(b)(1)(E).  Employing "a practical rather than a cramped construction," the court held that direct review in the circuit court was appropriate, even though the regulations did not impose technical requirements but were "far more general and rest[ed] dominantly on policy choices." *Id.*  In fact, the court cited several reasons for concluding that such "broad, policy-oriented rules" are actually more suitable for direct circuit court review than "specific technology-based rules." *Id.* at 405 n.15.  The court noted that *E.I. du Pont* "does not unequivocally dictate our result but [its] reasoning strongly supports our holding that we have jurisdiction."  *Id.* at 406.

In *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446 (4th Cir. 1977) ("*VEPCO*"), the Fourth Circuit addressed consolidated petitions challenging EPA regulations prescribing requirements for the location, design, construction and capacity of cooling water intake structures used to withdraw from, rather than discharge into, covered waters.  The challengers argued that such requirements could not be "other limitations" under § 1369(b)(1)(E) until they were actually adopted in an individual permit proceeding.  Because the requirements were not self-executing, the challengers argued they were only presumptively applicable and did not actually impose any limitation or restriction on point-source discharges.  The court held the argument was foreclosed by *E.I. du Pont*.  *VEPCO*, 566 F.2d at 449–50.  The court held the requirement that certain information be considered in determining the best available technology for intake structures was a sufficient restriction on the discretion of point source operators and permit issuers to constitute an "other limitation" under subsection (E).  *Id.*  Further, citing *E.I. du Pont*, the court noted the regulations were so closely related to effluent limitations, that "it would be anomalous to have their review bifurcated between different courts."  *Id.* at 450.  The court held that circuit court review was proper under subsection (E), stating that "this result is consistent with the jurisdictional scheme of the Act, which in general leaves review of standards of nationwide applicability to the courts of appeals, thus furthering the aim of Congress to achieve nationally uniform standards."  *VEPCO*, 566 F.2d at 451.

More recently, the Eighth Circuit followed suit. In *Iowa League of Cities v. U.S. E.P.A.*, 711 F.3d 844 (8th Cir. 2013), the court addressed two letters from the EPA sent to a senator and alleged to have effectively established new regulatory standards governing municipal water treatment processes. The court first noted that "the Supreme Court has recognized a preference for direct appellate review of agency action pursuant to the APA." *Id.* at 861 (citing *Fla. Power*, 470 U.S. at 745). The court rejected the EPA's contention that the subject letters, couched in terms of what "should not be permitted" by regulated entities, did not "promulgate" a binding limitation. Noting that the EPA had characterized the letters as expressing its position or policy, the court dismissed the notion that the instruction was not binding as "Orwellian Newspeak." *Id.* at 865. The court did not cite *E.I. du Pont*, but adopted the *VEPCO* formulation of "limitation" and went on to hold that subsection (E) applies if "entities subject to the CWA's permit requirements face new restrictions on their discretion with respect to discharges or discharge-related processes." *Id.* at 866.

These decisions from the D.C., Fourth, and Eighth Circuits demonstrate courts' willingness to view *E.I. du Pont* as license to construe Congress's purposes in § 1369(b)(1) more generously than its language would indicate.[2] However, movants herein read *E.I. du Pont* differently. They argue *E.I. du Pont*'s holding is narrower and should be limited to its facts. In support they cite decisions from the Eleventh and Ninth Circuits refusing to find circuit court jurisdiction under subsection (E).

In both *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1287 (11th Cir. 2012), and *Northwest Environmental Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1015–16 (9th Cir. 2008), the courts reached *results* different from those reached in the D.C., Fourth, and Eighth Circuits. However, the decisions in all five circuits are readily reconcilable. In both *Friends of the Everglades* and *Northwest Environmental*, the courts acknowledged the above discussed *NRDC* and *VEPCO* rulings, but found the regulations before them materially distinguishable from those deemed to come within the scope of § 1369(b)(1)(E). Far from *restricting* "untrammeled

---

[2]Most recently, the "functional approach" employed in these cases was applied by two district courts in relation to the Clean Water Rule in *this* litigation to find circuit court jurisdiction under subsection (E). *Murray Energy Corp. v. U.S. E.P.A.*, 2015 WL 5062506 (N.D. W.Va. Aug. 26, 2015); *State of Georgia v. McCarthy*, 2015 WL 5092568 at *2–3 (S.D. Ga. Aug. 27, 2015).

Case 3:15-cv-03927-MED Document 416 Filed 03/08/16 Page 31 of 128

Nos. 15-3751, et al.    *In re: U.S. Dep't of Defense & U.S. Envtl. Protection Agency Final*    Page 10
                        *Rule: Clean Water Rule*

discretion," the regulations at issue in *Friends of the Everglades* and *Northwest Environmental* actually created *exemptions* from limitations. Both courts concluded that an exemption from limitation simply cannot be fairly characterized as a limitation. Neither court criticized the approach adopted in *E.I. du Pont* and applied in *NRDC* and *VEPCO*. Nor did either court reject the notion that an "other limitation" can be made out by an indirect restriction on discretion. Rather, *Friends of the Everglades* and *Northwest Environmental* held that no construction could render an exemption from limitation what it plainly is not: a "limitation" under subsection (E).[3] The two lines of authority are therefore not inconsistent.

Here we acknowledge that the Rule is definitional only and does not *directly* impose any restriction or limitation. Yet, neither does the Rule create an exemption from limitation. By clarifying the definition of "waters of the United States," the Rule undeniably has the *indirect* effect of altering permit issuers' authority to restrict point-source operators' discharges into covered waters. The alteration invariably results in expansion of regulatory authority in some instances and imposition of additional restrictions on the activities of some property owners. These restrictions, of course, are presumably the reason for petitioners' challenges to the Rule. Hence, although the Rule is definitional in nature, it is undeniably, in the language of *E.I. du Pont*, a "basic regulation governing other individual actions issuing or denying permits." 430 U.S. at 136. To rule that Congress intended to provide direct circuit court review of such individual actions but intended to exclude from such review the definitional Rule on which the process is based, would produce, per *E.I. du Pont*, "a truly perverse situation." *Id.* To avoid just such an outcome, the *E.I. du Pont* Court reasoned that Congress must have intended that both types of regulation would be subject to review in the same forum, i.e., the circuit courts.[4]

---

[3]These authorities were cited as persuasive in *this* litigation by one district court. *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *2 (D. N.D. Aug. 27, 2015). However, the *North Dakota* court ignored the fact that, unlike the regulations at issue in those cases, the Clean Water Rule does not create an exemption. And despite noting the pertinence of the *NRDC-VEPCO-Iowa League* line of cases, the *North Dakota* court conspicuously ignored their holdings.

[4]*E.I. du Pont*'s analysis is also dispositive of movants' argument that review under subsection (E), by its terms, applies only to action by the EPA Administrator approving or promulgating a limitation "under section 1311, 1312, 1316, or 1345 of this title." Movants contend that all of these sections pertain to effluent limitations. Inasmuch as the Agencies do not even argue that the Clean Water Rule represents an effluent limitation, movants contend the Rule cannot be deemed to have been promulgated under any of these sections.

*E.I. du Pont* is the last word from the Supreme Court on § 1369(b)(1)(E). It is still good law. Our sister courts in the D.C., Fourth, and Eighth Circuits have all applied *E.I. du Pont*'s approach and have defined the scope of direct circuit court review under subsection (E) more broadly than a strict interpretation of its language would indicate. The two circuit-level decisions, from the Ninth and Eleventh Circuits, that declined to find circuit court jurisdiction under subsection (E) did so in relation to agency action materially distinguishable from the Rule here at issue. The movants' position is thus devoid of substantial case law support. While their plain-language arguments are not without facial appeal, we are hardly at liberty to ignore the consistent body of case law that has sprung from that language in encounters with the real world. In response to concern about producing a "perverse situation" seemingly at odds with congressional purpose, movants have no answer beyond their argument that Congress must be held to say what it means and mean what it says. Were we writing on a blank slate, the argument would be more persuasive, but we're not. As an "inferior court," we are obliged to take our lead from the Supreme Court. Having discerned no persuasive grounds to depart from the rationale that controlled in *E.I. du Pont*, I conclude that we, like our sister circuits, must follow its lead.

Viewing the Clean Water Rule through the lens created in *E.I. du Pont* reveals a regulation whose practical effect will be to *indirectly* produce various limitations on point-source operators and permit issuing authorities. Accordingly, although the Rule does not itself impose any limitation, its effect, in the regulatory scheme established under the Clean Water Act, is such as to render the Rule, per the teaching of *E.I. du Pont* and its progeny, subject to direct circuit court review under § 1369(b)(1)(E).

### 2. *Subsection (F) – "Issuing or Denying Permit"*

Evaluation of the second claimed basis for direct circuit court review proceeds in like manner. Movants argue that § 1369(b)(1)(F) does not justify jurisdiction in the circuit court because the Clean Water Rule is not an action of the EPA Administrator "in issuing or denying a permit." Yet, in relation to subsection (F), too, the Supreme Court has opened the door to

---

Yet, the Rule purports to be adopted under authority, *inter alia*, of section 311 (33 U.S.C. § 1311). 80 Fed. Reg. at 37,055. And subsection (E) prescribes direct circuit court review of any "other limitation," in addition to any effluent limitation. It follows that the Rule, representing an "other limitation" as defined in *E.I. du Pont* and its progeny, and adopted pursuant to § 1311, comes within the scope of circuit court review under § 1369(b)(1)(E).

constructions other than a strict literal application.  In *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 196–97 (1980), the Court reversed the Ninth Circuit and held that an action of the Administrator "functionally similar" to denial of a permit is encompassed within subsection (F). If the "precise effect" of the action would be to deny a permit, the Court reasoned, it would be irrational to conclude, based on a strictly literal application of subsection (F), that the action would be subject to review in district court rather than circuit court.  The Court recognized that direct review in the circuit court "would best comport with the congressional goal of ensuring prompt resolution of challenges to EPA's actions."  *Id.* at 196.  Addition of another level of judicial review, the Court observed, "would likely cause delays in resolving disputes under the Act."  *Id.* at 197.  In conclusion, the Court remarked:  "Absent a far clearer expression of congressional intent, we are unwilling to read the Act as creating such a seemingly irrational bifurcated review system."  *Id.*

Here, similarly, the Agencies contend that the effect of the Clean Water Rule, operating in the extant regulatory scheme, is to impact permitting requirements, thereby affecting the granting and denying of permits.  This is enough, the Agencies argue, to bring the Clean Water Rule within the ambit of subsection (F), because it too impacts permitting requirements.  In support they cite a Sixth Circuit case, *Nat'l Cotton Council v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009), *cert. denied sub nom. Crop Life v. Baykeeper*, 130 S.Ct. 1505 (2010), and *Am. Farm Bureau Fed'n v. Baykeeper*, 130 S.Ct. 1505 (2010).  In *National Cotton*, this court held that subsection (F) authorizes direct circuit court review not only of actions issuing or denying particular permits, but also of regulations governing the issuance of permits.  The court relied on authorities from the Ninth Circuit and D.C. Circuit stemming from *E.I. du Pont* and *Crown Simpson*.  *See Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1296–97 (9th Cir. 1992); *Am. Mining Cong. v. U.S. E.P.A.*, 965 F.2d 759, 763 (9th Cir. 1992); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 656 F.2d 768, 775 (D.C. Cir. 1981).  In fact, the *National Cotton* court noted that this more expansive reading of subsection (F) encompassed even regulations that *exempted* certain discharges from permitting requirements.  *Nat'l Cotton*, 553 F.3d at 933.  That

is, under subsection (F), a regulation that imposes no restriction or limitation is reviewable in circuit court, so long as it affects permitting requirements.[5]

Movants maintain that a mere impact on permitting requirements is not enough to bring the Rule within subsection (F). They contend the holding of *Crown Simpson*'s expansion of the plain language of the provision is really quite narrow and that *National Cotton*'s reading of subsection (F) is overly broad and even inconsistent with *Crown Simpson*. They contend the "precise effect" of the Clean Water Rule is *not* to deny any permit and that it is therefore not "functionally similar."

Movants attack *National Cotton* on several fronts. First, they contend the decision is not entitled to precedential weight because its determination of jurisdiction was summary in nature and devoid of substantive analysis. In support they cite *Emswiler v. CSX Transportation, Inc.*, 691 F.3d 782, 788–90 (6th Cir. 2012), for the proposition that "drive-by jurisdictional rulings" based on "less than meticulous" reasoning should be accorded no precedential effect. *Emswiler* is inapposite. The *Emswiler* court used these characterizations in relation to an opinion's careless characterization of a party's failure to meet a threshold exhaustion requirement as depriving the court of subject matter jurisdiction. While the failure to exhaust impacted the plaintiff's ability to win relief on the merits, the *Emswiler* court called it "less than meticulous" to say the failure to exhaust deprived the court of subject matter jurisdiction. *Id.* at 789. The *National Cotton* jurisdictional ruling was not the product of carelessness. It is succinct because it efficiently follows the holdings of several other rulings—one by the Supreme Court—whose reasoning it implicitly incorporated by citing them.

Granted, the Eleventh Circuit expressly declined to follow *National Cotton* in *Friends of the Everglades*, 699 F.3d at 1288, rejecting the position that *Crown Simpson* legitimized direct circuit court review of any "regulations relating to permitting itself." The court noted that, although the Sixth Circuit adopted that interpretation in *National Cotton*, it did so in reliance on two Ninth Circuit cases that had since been distinguished by the Ninth Circuit in *Northwest Environmental*, 537 F.3d at 1016–18. In *Northwest Environmental*, 537 F.3d at 1018, as in

---

[5] *National Cotton* was followed in *this* litigation in *Murray Energy*, 2015 WL 5062506 at *5–6, the court noting there was no dispute that the Clean Water Rule will have an impact on permitting requirements.

*Friends of the Everglades*, 699 F.3d at 1288, the court ruled that a regulation creating a permanent exemption from the permitting process could not have the effect of granting or denying a permit reviewable under § 1369(b)(1)(F) precisely because the regulation *excluded* certain discharges from the permitting process altogether.

Yet, even if it be conceded that *National Cotton* said too much when it noted in *dicta* that the Ninth Circuit had construed subsection (F) broadly enough to include an exemption from regulation, the fact remains that the action here under review is not an exemption. Rather, both petitioners and the Agencies operate on the understanding that the effect of the Clean Water Rule is not solely to exclude waters from protection, but to extend protection to some additional waters. This extension indisputably expands regulatory authority and impacts the granting and denying of permits in fundamental ways. The later clarification of Ninth Circuit law noted in *Friends of the Everglades* does not, therefore, in any way undermine the authority of *National Cotton* as applied to the Clean Water Rule.

Finally, movants contend *National Cotton* is wrongly decided. They contend that *Crown Simpson*'s expanded construction of subsection (F) was narrow and circumscribed; whereas *National Cotton*'s holding that subsection (F) authorizes circuit court review of "regulations governing the issuance of permits" is unduly broad. Perhaps. Yet, if we believed *National Cotton* was not distinguishable and was wrongly decided, we would still not be free to reject its holding. Generally, in a multi-circuit case where a question of federal law is at issue, the transferee court is obliged to follow its own interpretation of the relevant law. *See Murphy v. FDIC*, 208 F.3d 959, 964–65 (11th Cir. 2000) (citing *In re Korean Airlines Disaster*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987), and observing that other circuits have uniformly agreed with the D.C. Circuit). Moreover, no other court has held that *National Cotton* was wrongly decided. *National Cotton*, as well as the Ninth Circuit and D.C. Circuit authorities on which it relied, are still good law. Movants have not identified any materially contrary authority.

Furthermore, *National Cotton*'s construction is consistent with congressional purpose, which appears to have been the guiding light in both *E.I. du Pont* and *Crown Simpson*. In *Florida Power*, 470 U.S. at 744–45, in relation to the Atomic Energy Act, the Court recognized that "one crucial purpose" of statutes providing for direct circuit court review of agency action is

judicial economy. *Id.* at 744. The Court noted that the district court's superior factfinding capacity is typically unnecessary to judicial review of agency action. On the other hand, providing for initial review in the district court has the negative effect of "requiring duplication of the identical task in the district court and in the court of appeals; both courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* The Court acknowledged that the intent of Congress, not the Court's concept of sound policy, is ultimately determinative, but concluded:

> Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals.

*Id.* at 746. *See also Tennessee v. Herrington*, 806 F.2d 642, 650 (6th Cir. 1986) (following *Florida Power* and noting that where Congress has provided for direct circuit court review but its intent is ambiguous in a specific case, policy considerations are relevant); *Natural Resources Def. Council v. Abraham*, 355 F.3d 179, 193 (2d Cir. 2004) (citing cases from Second, Seventh, Tenth and D.C. Circuits for the proposition that "when there *is* a specific statutory grant of jurisdiction to the court of appeals, it should be construed in favor of review by the court of appeals.").

National Cotton's broader reading of subsection (F) is thus consistent with the preference in favor of circuit court review recognized in *Florida Power* and implicitly at work in both *E.I. du Pont*, *see* 430 U.S. at 128 (characterizing it as "almost inconceivable that Congress would have required duplicate review in the first instance by different courts"), and *Crown Simpson*, *see* 445 U.S. at 196–97 (noting unwillingness to conclude Congress intended to cause delays that would result from duplicative review process).

In *Florida Power*, the Court overruled Justice Stevens' objection that proper deference to Congress required enforcement of "the plain and simple construction of the statutory language." *Id.* at 750. Justice Stevens' plain-language position, like that of movants in this case, is not devoid of logic. Yet, as Justice Stevens protested, the Court rejected it as a matter of mere "semantic quibbles." *Id.* We do not view movants' plain-language arguments as semantic quibbles, but, in my view, they have clearly failed to identify any *substantial* reason to conclude

the preference favoring direct circuit court review—created by Congress in § 1369(b)(1) and honored by the Supreme Court—does not, in this case, ultimately serve all parties' interests in efficiency, judicial economy, clarity, uniformity and finality.

*Florida Power*, like *E.I. du Pont* and *Crown Simpson*, demonstrates a strong preference for construing Congress's provision for direct circuit court review of agency action by a practical, functional approach rather than a technical approach.   A holding that we have jurisdiction to hear the instant petitions for review of the Clean Water Rule is consistent with this understanding.   On the other hand, a contrary ruling, though facially consonant with the plain language of § 1369(b)(1), finds practically no solid support in the case law.   Accordingly, I conclude that we have jurisdiction under subsection (F) as well.

### C.  Miscellaneous Objections

Movants present arguments based on other statutory provisions, items of legislative history and canons of construction.   The arguments are not persuasive.   That the Clean Water Rule was promulgated jointly by the EPA Administrator *and* the Secretary of the Army does not defeat the fact that it represents action, in substantial part, of the Administrator.   The items of legislative history identified by the parties and said to be probative of congressional intent are sparse and frankly shed little light on the specific jurisdictional questions before the court.   *See E.I. du Pont*, 430 U.S. at 133 (dismissing arguments based on other provisions of the statute and legislative history as inconclusive and not deserving of detailed discussion).   Similarly, the various canons of construction alluded to by the parties are inconclusive and carry little weight in comparison with the dispositive considerations, as defined in the foregoing discussion of the guiding case law.

Movants also raise what they characterize as "due process concerns."   They contend that if circuit court jurisdiction is exercised under § 1369(b)(1), then any other challenges to the Clean Water Rule not made within 120 days after its promulgation are foreclosed unless based on grounds which arose after the 120th day, per § 1369(b)(2).   If subsequent as-applied challenges are thus deemed precluded, then unwary point-source operators and landowners uncertain about the scope of the Clean Water Act's regulatory reach may be subject to

enforcement actions and penalties without fair notice of the conduct prohibited. In *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992), the Ninth Circuit referred to this preclusive effect as a "peculiar sting."

The concern is speculative and overblown in this case. If the court exercises jurisdiction over petitioners' instant challenges to the validity of the Rule in this nationwide multi-circuit case and upholds the Rule, then that determination *should* have preclusive effect. *See Narragansett Elec. Co. v. U.S. E.P.A.*, 407 F.3d 1, 5 (1st Cir. 2005) (noting that "the short time frame in § 1369(b) clearly reflects some effort to protect the EPA's interests in finality in certain matters, particularly certain rulemakings with substantial significance and scope."). On the other hand, this court's exercise of jurisdiction and ruling on a challenge to the *validity* of the Rule would not preclude challenge to subsequent *application* of the Rule in a particular permitting requirement or enforcement action. *See Decker v. Nw. Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1335 (2013) (noting that whereas a challenge to the validity of regulations would be subject to the exclusive jurisdictional bar of § 1369(b)(2), an enforcement action would not be). To the extent our eventual ruling on the validity of the Rule might conceivably be asserted in overbroad fashion as barring a defense against application of the Rule in an enforcement action, the asserted bar would be subject to testing as excessive and unfairly prejudicial in that action. *See Nat. Res. Def. Council v. U.S. E.P.A.*, 673 F.3d 400, 407 (D.C. Cir. 1982) (rejecting the same "due process" argument and suggesting that overbroad application of the § 1369(b)(2) bar could be challenged, when ripe, as unconstitutional). We therefore reject movants' "due process concerns" as premature and unfounded.

### III. CONCLUSION

Both sides have presented worthy arguments in support of their respective positions on jurisdiction. Since enactment of the Clean Water Act in 1972, the jurisdictional provisions of § 1369(b)(1)(E) and (F) have been subjected to judicial scrutiny in relation to various regulatory actions and have been consistently construed not in a strict literal sense, but in a manner designed to further Congress's evident purposes. Pursuant to the uniform trend of the instructive case law, the scope of direct circuit court review has gradually expanded. In response, Congress has not moved to amend the provision or otherwise taken "corrective" action. As explained

above, the instant petitions for review of the Clean Water Rule come within the scope of subsections (E) and (F), as they have come to be defined in the governing case law.  Movants have failed to identify any particular circumstances or practical considerations that would justify holding that adjudication of the instant petitions for judicial review in the various district courts would better serve Congress's purposes.  Instead, recognition of our authority and our duty to directly review the Clean Water Rule in this multi-circuit case is in all respects consonant with the governing case law and in furtherance of Congress's purposes.  Conversely, to rule that we lack jurisdiction would be to contravene prevailing case law and frustrate congressional purposes without substantial justification.

We hold that jurisdiction is properly laid in this court.  All pending motions to dismiss are **DENIED**.

---

## CONCURRING IN THE JUDGMENT

---

GRIFFIN, Circuit Judge, concurring in the judgment, only.

I concur in the judgment holding that we possess subject-matter jurisdiction in this case; thus, I join in denying petitioners' motions to dismiss. However, I do so only because I am required to follow our precedentially-binding decision, *National Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927 (6th Cir. 2009). Were it not for *National Cotton*, I would grant the motions to dismiss.

### I.

Congress establishes the jurisdiction of the courts of appeals and other inferior courts. *See, e.g., Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). In determining whether the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, creates jurisdiction in our court over a case or controversy, we must examine and apply the terms of the statute enacted by Congress. As with all matters of statutory construction, we should apply a textualist, not a "functional" or "formalistic," approach.[1]

In this regard, "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485 (1917). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id.* at 490. Recognizing the consequences of unbridled judicial forays into the legislative sphere, the Supreme Court has admonished "'time and again that courts must presume that a legislature says

---

[1] With a heavy heart, I acknowledge the sudden passing of Justice Antonin Scalia. Justice Scalia was the founder and champion of the modern textualist mode of constitutional and statutory construction. His essay, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW (1997), and other writings and opinions profoundly influenced a generation of attorneys, legal scholars, and judges. Justice Scalia's legacy will live on for decades in countless opinions such as this one.

in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy,* 548 U.S. 291, 296 (2006) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)).  Accordingly, "[w]hen the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (internal citations and quotation marks omitted).

Whether it is desirable for us to possess jurisdiction for purposes of the efficient functioning of the judiciary, or for public policy purposes, is not the issue.  Rather, the question is whether Congress in fact created jurisdiction in the courts of appeals for this case.  I conclude that it did not.

The Environmental Protection Agency and the U.S. Army Corps of Engineers ("the Agencies") argue that both 33 U.S.C. § 1369(b)(1)(E) and (F) vest this court with jurisdiction regarding petitioners' claims.  In my view, it is illogical and unreasonable to read the text of either subsection (E) or (F) as creating jurisdiction in the courts of appeals for these issues.  Nonetheless, because *National Cotton* held otherwise with respect to subsection (F), I concur in the judgment, only.

II.

Subsection (E) creates jurisdiction to review an action "approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title[.]"  Sections 1311 and 1312 specifically set forth effluent limitations and water quality related-effluent limitations.  Sections 1316 and 1345 provide additional limitations on discharges and sewage sludge to achieve state water quality standards when those in sections 1311 and 1312 fall short.  The Act defines "effluent limitation" as expressly relating to *discharges*:

> The term "effluent limitation" means any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are *discharged* from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance.

§ 1362(11) (emphasis added).  It does not define "other limitation."

Petitioners ask that we draw an associational link between effluent and other limitations, directing this court to a Fourth Circuit case that speaks in terms of an "other limitation" being "closely related" to "effluent limitations," *Va. Elect. & Power Co. v. Costle*, 566 F.2d 446, 450 (4th Cir. 1977) ("*VEPCO*"), and to a Seventh Circuit case holding that "other limitation" is "restricted to limitations directly related to effluent limitations." *Am. Paper Inst., Inc. v. U.S. E.P.A.*, 890 F.2d 869, 877 (7th Cir. 1989). On the other hand, the Agencies advocate for—and the lead opinion applies—a broad reading of "other limitation"; that is, "other limitation" includes "restrictions that are *not* effluent limitations."

In my view, both are wrong. Whatever the relationship may be between effluent and other limitations, the plain text of subsection (E) clearly delineates what the limitations are, and what they are not: the "limitations" set forth in §§ 1311, 1312, 1316, and 1345 provide the boundaries for what constitutes an effluent or other limitation. The statutory interpretation canon, *noscitur a sociis*, drives this point home. Simply, "a word is known by the company it keeps" to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (citation omitted). Application of this canon is simple: "any effluent limitation or other limitation" must be related to the statutory boundaries set forth in §§ 1311, 1312, 1316, and 1345.

The problem with the boundaries for the Agencies is that the definitional section the Clean Water Rule modifies—"[t]he term 'navigable waters' means the waters of the United States, including the territorial seas"—does not emanate from these sections. It is a phrase used in the Act's definitional section, § 1362, and no more. But the definitional section is not mentioned in § 1369, let alone the specific sections listed in subsection (E). And the definitional section, as the lead opinion acknowledges, is not self-executing; at best, it operates in conjunction with other sections scattered throughout the Act to define when its restrictions even apply. Accordingly, the lack of any reference to § 1362 in subsection (E) counsels heavily against a finding of jurisdiction. *See Friends of Earth v. U.S. E.P.A.*, 333 F.3d 184, 189 (D.C. Cir. 2003) ("[T]he courts of appeals have consistently held that the express listing of specific EPA actions in section 1369(b)(1) precludes direct appellate review of those actions not so

specified."); *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992) ("It would be an odd use of language to say 'any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title' in § 1369(b)(1)(E) if the references to particular sections were not meant to exclude others.").

The Agencies' response to this textual point is underwhelming, raising suppositional and policy arguments.  First, the Agencies contend that they promulgated the Clean Water Rule *only* under the *effluent limitations* provision codified at § 1311.  Section 1311 makes the unauthorized "discharge of any pollutant by any person . . . unlawful."  § 1311(a).  The phrase "discharge of any pollutant" is defined, as pertinent here, as "any addition of any pollutant to navigable waters from any point source."  § 1362(12)(A).  The Agencies concede that "[t]he plain text reading of the phrase 'other limitation under sections 1311, 1312, 1316, or 1345' . . . *can only refer to limitations that are promulgated under the specified sections but are not effluent limitations*." (Emphasis added.)  They then suppose in circular fashion that "[b]y defining what waters are 'waters of the United States,' the Clean Water Rule establishes where the Act's prohibitions and requirements apply."

This may be true, but it fails muster on the point of whether the Clean Water Rule is any "other limitation" within the meaning of § 1311.  Importantly, neither the Agencies nor the lead opinion have identified a specified subsection within § 1311 that are "not effluent limitations" under which the Agencies promulgated the Clean Water Rule.  This is because they cannot. Waters of the United States applies across the Act, not just to those discharge limitations set forth in § 1311.  The Clean Water Rule is not a "limitation" on the discharge of pollutants *into* waters of the United States; rather, it sets the jurisdictional reach for whether the discharge limitations even apply in the first place.  In the Agencies' own words:

> The action imposes no enforceable duty on any state, local, or tribal governments, or the private sector, and does not contain regulatory requirements that might significantly or uniquely affect small governments.

Clean Water Rule:  Definition of "Waters of the United States," 80 Fed. Reg. 37,054, 37,102 (June 29, 2015) (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pts. 110, 112, 116, 117, 122, 230, 232, 300, 302, and 401).  In short, I refuse to read § 1369's narrow jurisdictional

authorization in such a circular fashion, expansively turning the broadening of the Act's jurisdiction into a limitation that may be imposed *only when jurisdiction is appropriate. Cf. North Dakota v. U.S. E.P.A.*, --- F. Supp. 3d ---, 2015 WL 5060744, at \*2 (D.N.D. Aug. 27, 2015) ("[T]he States have exactly the same discretion to dispose of pollutants into the waters of the United States after the Rule as before.").

Second, the Agencies raise policy considerations as to why review of such a nationally important rule should originate in the courts of appeals. They argue, for example, that the definition of waters of the United States is a "fundamental" and "basic regulation" pertinent to the Act's backbone—its prohibition against discharging pollutants into such waters without a permit. The Agencies also argue initial review in the district courts will inevitably lead to waste of judicial and party resources, delays, and possibly even different results.

However, no matter how important a policy prerogative may be, the Act's plain and unambiguous text binds this court. That text stands in marked contrast to the Clean Air Act's express authorization to challenge "any other nationally applicable regulations" by the EPA in the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1); *Am. Paper Inst.*, 890 F.2d at 877 ("Congress could easily have provided jurisdiction . . . by providing a general jurisdiction provision in the Act. Instead, Congress specified those EPA activities that were directly reviewable by the court of appeals.") (internal citation omitted). And that text makes clear that this court does not have jurisdiction to hear a challenge to a regulation that does not impose any limitation as set forth by the Act.

The lead opinion departs from the Act's plain text by relying on a string of cases it contends encourages a function-over-form approach to subsection (E). *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112 (1977), we are told, broadly interprets the Act's jurisdictional authorization to prevent the "truly perverse situation" where the courts of appeals review actions issuing or denying permits, but not the "basic regulations governing those individual actions." I agree that *E.I. du Pont* speaks to such policy considerations, but disagree that such policy considerations drove the Court's analysis.

In *E.I. du Pont*, the Supreme Court considered effluent limitation regulations promulgated by the EPA for discharges by the inorganic chemical industry. *Id.* at 122–24. The primary issue was whether the Act granted the EPA the power to set effluent limitations by regulation (thereby falling within subsection (E)) or by guideline (thereby falling outside subsection (E)). *Id.* at 124–25. "Thus the issue of jurisdiction to review the regulations [was] intertwined with the issue of [the] EPA's power to issue the regulations." *Id.* at 125. After resolving the "critical question [of] whether [the] EPA has the power to issue effluent limitations by regulation" in the EPA's favor based on the statute's text and legislative history, *id.* at 124, 126–36, the Court plainly noted that its holding that the Act "authorize[d] the [EPA] to promulgate effluent limitations [by regulation] for classes and categories of existing point sources *necessarily resolve[d] the jurisdictional issue* as well." *Id.* at 136 (emphasis added).

Yet, the lead opinion draws its "functional" "lens" from *E.I. du Pont*'s subsequent discussion as to why it rejected the industry's argument that subsection (E)'s reference to § 1311 (the effluent limitations provision) "was intended only to provide for review of the grant or denial of an individual variance" from the Act's effluent limitations restriction. *Id.* Among other reasons, the Court found this argument unpersuasive because the industry's "construction would produce the truly perverse situation in which the court of appeals would review numerous individual actions issuing or denying permits . . . but would have no power of direct review of the basic regulations governing those individual actions." *Id.* This policy reason came *after* a plain textual rejection of the industry's position. *Id.* It is, therefore, a far stretch to take this dicta and expand it as the lead opinion does to find jurisdiction proper when a regulation's "practical effect" only sets forth "indirect" limits. And, unlike in *E.I du Pont*, the Agencies here admit they have not promulgated an effluent limitation. I therefore decline to read *E.I. du Pont*, as the lead opinion does, as shoehorning an exercise in jurisdictional line-drawing into subsection (E)'s "other limitation" provision.

To the extent policy considerations are responsible for *E.I. du Pont*'s outcome, I disagree that, to borrow the lead opinion's phrase, such "real world" considerations mandate a watered-down version of textualism in this case, erroneously elevating the perceived congressional purpose over the statutory language. As the Supreme Court emphasized just last year, "[o]ur job

is to follow the text even if doing so will supposedly 'undercut a basic objective of the statute.'" *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) (citation omitted). Thus, when presented with "the clear meaning of the text, there is no need to . . . consult the [statute's] purpose. . . . [I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167–68 (2004) (citation omitted and second alteration in original). Put differently, unambiguous text trumps policy considerations. *See Kloeckner v. Solis*, 133 S. Ct. 596, 607 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text."); *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1710 (2012) ("[N]o legislation pursues its purposes at all costs, and petitioners' purposive argument simply cannot overcome the force of the plain text.") (internal citation omitted); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration."). As set forth, subsection (E)'s language could not be clearer, thus removing policy considerations from this court's analytical quiver.

Circuit case law drawing on this "functional approach" similarly misses the mark. Notably, *VEPCO* appears to define "limitation" as "a restriction on the untrammeled discretion of the industry which was the condition prior to the [Act's] passage." 566 F.2d at 450. Other cases relied upon by the lead opinion have followed this analysis. *See, e.g., Iowa League of Cities v. U.S. E.P.A.*, 711 F.3d 844, 866 (8th Cir. 2013); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 673 F.2d 400, 405 (D.C. Cir. 1982) ("*NRDC II*"). However, *VEPCO*'s statement requires context.

The regulation at issue in *VEPCO* governed the "structures used to withdraw water for cooling purposes." 566 F.2d at 446–51. It did "not impose specific structural or locational requirements upon cooling water intake structures," and instead just "require[d] that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." *Id.* at 450. Because the regulation mandated the consideration of certain information in constructing intake structures, the Fourth Circuit reasoned, that "in itself [was] a limitation on point sources and permit issuers" and

therefore restricted "the untrammeled discretion of the industry." *VEPCO* also drew from *E.I. du Pont*, reasoning that the regulation issued there was "so closely related to the effluent limitations and new source standards of performance . . . that . . . it would be anomalous to have their review bifurcated between different courts." *Id.* (*citing E.I. du Pont*, 430 U.S. at 136).

At most, *VEPCO* is an example of what constitutes an "other limitation"—a restriction on the industry's abilities to intrude upon the waters of the United States without the Agencies' permission to do so. In this regard, the Fourth Circuit's "untrammeled discretion" language makes absolute sense, but I disagree with the lead opinion's reliance upon this language here. The *Act* in and of itself restricts the industry's untrammeled discretion. I see no textual indication that Congress intended *any* restriction on the industry to be directly reviewed by the courts of appeals, yet under the lead opinion's reading, *any* industry restriction requires review here. The lead opinion's application thus swallows the rule.

Finally, that the Clean Water Rule arguably expands the Act's jurisdiction cannot be a reason to find a functional limitation under subsection (E). The lead opinion hangs its "functional" premise on the fact that the Clean Water Rule is a "basic regulation" affecting the Act's core, defining where it applies and where it does not. It presumes, perhaps rightly so, that the Clean Water Rule "results in [an] expansion of regulatory authority in some instances and impos[es] . . . additional restrictions on the activities of some property owners." However, I cannot agree that the latter supports the former in concluding that the Clean Water Rule "has the *indirect* effect of altering permit issuers' authority to restrict point-source operators' discharges into covered waters." A plausible hypothetical removes the linchpin in this analysis. Suppose instead of taking a flow-like approach to the Act's jurisdiction, the Agencies—perhaps under a different administration—promulgate a rule that ebbs toward a more restricted view, consistent with the plurality opinion in *Rapanos v. United States*, 547 U.S. 715 (2006). Under the lead opinion's analysis, a rule *narrowing* the scope of the waters of the United States would *also* be an "other limitation" sufficient to trigger our jurisdiction because it too would indirectly affect point-source operators and permit issuing authorities, albeit in a less restrictive manner. Congress could not have intended such a nonsensical result.

For these reasons, I cannot conclude that subsection (E) authorizes our jurisdiction.

III.

Second, the lead opinion concludes we have jurisdiction to hear petitioners' challenges under subsection (F). I agree, but for different reasons. Specifically, while I agree that *National Cotton* controls this court's conclusion, I disagree that it was correctly decided. But for *National Cotton*, I would find jurisdiction lacking. I therefore concur in the judgment, only.

Section 1369(b)(1)(F) provides exclusive jurisdiction in this court to review an action "issuing or denying any permit under section 1342, [the National Pollutant Discharge Elimination System ("NPDES")]." On its face, subsection (F) clearly does not apply to the Clean Water Rule's promulgation. *See Rhode Island v. U.S. E.P.A.*, 378 F.3d 19, 23 (1st Cir. 2004) ("By its plain terms, [subsection (F)] conditions the availability of judicial review on the issuance or denial of a permit."). Under a plain text reading, the Clean Water Rule neither issues nor denies a permit under the NPDES. In my view, this should end the analysis. I am, however, constrained by our court's precedent holding that "issuing or denying any permit" means more than just that.

As the lead opinion correctly notes, several courts have deviated from a strict reading of the jurisdictional language and toward a more "functional" approach. In *Crown Simpson Pulp Company v. Castle*, for example, the Supreme Court blessed jurisdiction in the courts of appeals when the EPA's action—there, vetoing California's proposal to grant permits for pulp mills to discharge pollutants into the Pacific Ocean—had the "precise effect" of denying a permit. 445 U.S. 193, 196 (1980). In other words, jurisdiction was proper because the EPA's action was "functionally similar to its denial of a permit in States which do not administer an approved permit-issuing program." *Id.* A contrary ruling, held the Supreme Court, would lead to an "irrational bifurcated system" depending upon "the fortuitous circumstance of whether the State in which the case arose was or was not authorized to issue permits." *Id.* at 196–97. Both the D.C. Circuit, *Nat. Res. Def. Council, Inc. v. U.S. E.P.A*, 656 F.2d 768, 776 (D.C. Cir. 1981) ("*NRDC I*"); *NRDC II*, 673 F.2d at 405 (then-Judge Ginsburg's "practical rather than a cramped construction" counsel), and the Ninth Circuit, *Am. Mining Congress v. U.S. E.P.A.*, 965 F.2d 759 (9th Cir. 1992), *Nat. Res. Def. Council, Inc., v. U.S. E.P.A.*, 966 F.2d 1292, 1297 (9th Cir. 1992)

("*NRDC III*"), *Nat. Res. Def. Council v. U.S. E.P.A.*, 526 F.3d 591, 601 (9th Cir. 2008) ("*NRDC IV*"), have similarly adopted a functional approach to jurisdiction under subsection (F).

I depart ways with the lead opinion at the breadth with which it reads *Crown Simpson*. As the Ninth Circuit made clear in *Northwest Environmental Advocates v. U.S. E.P.A.*, "[t]he facts of [*Crown Simpson*] make clear that the Court understood functional similarity in a narrow sense." 537 F.3d 1006, 1016 (9th Cir. 2008). The Supreme Court was clearly concerned with a rigid construction of "issuing or denying" given the factual circumstances of *Crown Simpson*—*i.e.*, had the EPA not delegated California the authority to designate NPDES permits, it would have had the power to grant or deny permits directly (thus explaining the "perverse" result rationale). With this factual overlay, the Court's "precise effect" exception makes sense.

That exception simply does not apply here. We have underscored that the text matters when interpreting the jurisdictional grant of § 1369(b)(1). *See Lake Cumberland Trust, Inc. v. U.S. E.P.A.*, 954 F.2d 1218, 1221–24 (6th Cir. 1992) (noting the textual distinctions between subsections (E) and (G) to find no jurisdiction). It is also not lost on me that *National Cotton* itself purported to accentuate § 1369(b)(1)'s narrowness. 553 F.3d at 933 ("Congress did not intend court of appeals jurisdiction over all EPA actions taken pursuant to the Act."). It stretches the plain text of subsection (F) to its breaking point to hold that a definition setting the Act's boundaries has, under *Crown Simpson*, the "precise effect" of or is "functionally similar" to, approving or denying a NPDES permit. At best, the Clean Water Rule is one step removed from the permitting process. It informs whether the Act requires a permit in the first place, not whether the Agencies can (or will) issue or deny a permit.

Two other points buttress my problem with jurisdiction here. First, the Clean Water Rule applies across the entire Act, and not just with respect to the NPDES permitting process. This is particularly true when considering the fact that the Clean Water Rule's expansive definition also applies to the provision of the Act—§ 1344—requiring the Corps to issue permits for dredged or fill material. Section 1344, however, is not mentioned in subsection (F), only § 1342 is. Second, the Agencies' own argument as to why they contend the Clean Water Rule constitutes "issuing or denying any permit" shows why there are problems with extending jurisdiction to cover the Clean Water Rule. By suggesting that the Clean Water Rule identifies what waters will and will

not require permitting under NPDES, they have therefore identified situations—*i.e.*, not waters of the United States—where there would never be permit decisions in the first place to be reviewed by the courts of appeals. *See Nw. Envtl. Advocates*, 537 F.3d at 1018; *Friends of the Everglades*, 699 F.3d at 1288.

Although not bound by *Crown Simpson* and the other cases cited by the lead opinion, *National Cotton* dictates my conclusion. There, we extended jurisdiction under subsection (F) when a rule "regulates the permitting procedures." 553 F.3d at 933. At issue in *National Cotton* was an EPA rule exempting certain pesticides from the NPDES permitting requirements. *Id.* at 929. In expanding subsection (F)'s jurisdictional authorization, our court relied upon statements by the Ninth Circuit in *American Mining Congress* and *NRDC III* extending jurisdictional review from the "issuance or denial of a particular permit" to "the regulations governing the issuance of permits" and the "rules that regulate the underlying permit procedures." *Id.* at 933 (citations omitted).

*National Cotton*'s jurisdictional reach, in my view, has no end. Indeed, the lead opinion even acknowledges that *National Cotton* holds "a regulation that imposes no restriction or limitation is reviewable in circuit court, so long as it affects permitting requirements." It is a broad authorization to the courts of appeals to review *anything* relating to permitting notwithstanding the statutory language to the contrary.

Moreover, the Ninth Circuit has subsequently rolled back the two cases relied upon by *National Cotton* to broadly interpret subsection (F), *American Mining Congress* and *NRDC III*. *See Nw. Envtl. Advocates*, 537 F.3d at 1018. It also drew a line between statutory exemptions and permitting procedures, noting that a regulation granting a statutory exemption necessarily meant that the courts of appeals would "never have to consider on direct review an action involving the denial of an NPDES permit for pollutant discharges" and thus there was no danger of the "awkward[]" and bifurcated review problem described in *NRDC I. Id.* at 1018 (citation omitted). The Eleventh Circuit, sitting *en banc*, has also taken this tack. *See Friends of the Everglades*, 699 F.3d at 1288. It also directly criticized *National Cotton* for expanding subsection (F) to apply to any "regulations relating to permitting itself." *Id.*

The lead opinion distinguishes *Northwest Environmental Advocates* and *Friends of the Everglades*, noting that those cases addressed permitting *exemptions*. But so too did *National Cotton*. In my view, the Ninth and Eleventh Circuit's commentary regarding *National Cotton* and its undergirdings have merit, especially considering subsection (F)'s plain text and the factually narrow circumstances of *Crown Simpson* and *E.I. du Pont*. These same reasons lead me to conclude the lead opinion's reliance on a non-Clean Water Act case to support its policy arguments, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), is unavailing.

Taking *National Cotton*'s holding, as I must, there is a better way to reconcile these authorities: Permitting decisions under NPDES and exempting a certain action from the NPDES permitting process are functionally the same because both allow persons to discharge pollutants into the waters of the United States. Such actions, therefore, are reviewable under subsection (F). That is not what we have here. The Clean Water Rule presents neither a permitting exemption (*National Cotton*) nor similar functional equivalency (*Crown Simpson*) that any court has approved to find jurisdiction proper under subsection (F).

However, *National Cotton* goes further than just finding jurisdiction in cases involving permitting exemptions, and expands jurisdiction to review any regulation "governing" permits. 553 F.3d at 933. Although, in my view, the holding in *National Cotton* is incorrect, this panel is without authority to overrule it. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1095 (6th Cir. 2010) ("It is a well-established rule in this Circuit that a panel of this court may not overrule a prior published opinion of our court absent en banc review or an intervening and binding change in the state of the law.").[2] Here, the Clean Water Rule defines what waters necessarily require permits, and therefore is undoubtedly a "regulation[] governing the issuance of permits under section 402 [33 U.S.C. § 1342]." *National Cotton*, 553 F.3d at 933. Under this binding authority, the lead opinion properly concludes jurisdiction rests before us under subsection (F).

For these reasons, I concur in the judgment, only.

---

[2] That this action is before us upon consolidation by the Judicial Panel on Multidistrict Litigation does not change this result, for we are to apply our law absent an indication that it is "unique" and "arguably divergent from the predominant interpretation of . . . federal law." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 n.17 (6th Cir. 2003). Although I disagree with *National Cotton*, I cannot conclude that it is unique and diverges from the predominant view of the other circuits.

IV.

In sum, I am compelled to find jurisdiction is proper pursuant to *National Cotton*.  Absent *National Cotton*, I would dismiss the petitions for lack of jurisdiction.

———————————

## DISSENT

———————————

KEITH, Circuit Judge, dissenting.  I agree with Judge Griffin's reasoning and conclusion that, under the plain meaning of the statute, neither subsection (E) nor subsection (F) of 33 U.S.C § 1369(b)(1) confers original jurisdiction on the appellate courts.  Like Judge Griffin, I disagree with Judge McKeague.  Nevertheless, Judge Griffin concludes that original jurisdiction lies in the appellate courts under this court's opinion in *National Cotton Council of Am. v. U.S. EPA*, 553 F.3d 927 (6th Cir. 2009).  I believe Judge Griffin's reading of that case is wrong.

In *National Cotton*, this court concluded that it had original jurisdiction to review a rule that created exemptions to the permitting procedures of the Clean Water Act (the "Act").  553 F.3d at 933.  In holding that jurisdiction was proper, the court reasoned that "[t]he jurisdictional grant of [subsection (F)] authorizes the court of appeals 'to review the regulations governing the issuance of permits . . . as well as the issuance or denial of a particular permit.'" *Id.* at 933 (quoting *Am. Mining Cong. v. U.S. EPA*, 965 F.2d 759, 763 (9th Cir. 1992)).  Therefore, the court expanded subsection (F) to cover rules that "regulate[] the permitting procedures."  *See id.*; *cf.* 33 U.S.C. § 1369(b)(1)(F) (relating to administrative actions that "issu[e] or deny[] any permit under section 1342").  I view this limited expansion of subsection (F) as the holding of *National Cotton*.

By contrast, Judge Griffin contends that *National Cotton*'s holding expanded the scope of subsection (F) to include anything "relating" to permitting procedures.  While *National Cotton* expanded the scope of subsection (F) to cover rules "*regulating*" or "*governing*" permitting procedures, 553 F.3d at 933, it did not expand that subsection to cover all rules "*relating*" to those procedures, such as the one at issue here—a rule that merely defines the scope of the term "waters of the United States."  That a rule "relates" to a permitting procedure does not mean that it "regulates" or "governs" that procedure.  Therein lies the analytical fallacy in the concurrence.  Simply put, it cannot be that any rule that merely "relates" to permitting procedures—however tenuous, minimal, or tangential that relation may be—confers original jurisdiction upon this

court under subsection (F).  This could not have been the intent of the legislators who drafted seven carefully defined bases for original jurisdiction in the appellate courts—and it could not have been the intent of the *National Cotton* court itself.

Admittedly, the *National Cotton* court could have provided an explanation of what it meant by "regulations governing the issuance of permits."  *See* 553 F.3d at 933.  By not explaining this phrase, it invited much speculation about the scope of subsection (F).  For example, the Eleventh Circuit in *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288 (11th Cir. 2012), declined to extend the rationale and holding of *National Cotton* because this court failed to provide a better explanation of its reasoning.  However, *National Cotton*'s failure to define this phrase does not mean that this phrase must encompass everything.  I am reluctant to read *National Cotton* in a way that expands the jurisdictional reach of subsection (F) in an all-encompassing, limitless fashion.

In sum, *National Cotton*'s holding is not as elastic as the concurrence suggests.  If this court construes that holding to be so broad as to cover the facts of this case, that construction brings subsection (F) to its breaking point: a foreseeable consequence of the concurrence's reasoning is that this court would exercise original subject-matter jurisdiction over all things related to the Clean Water Act.  Accordingly, I respectfully dissent.

# ATTACHMENT 2

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |
|---|---|
| NORTH DAKOTA ET AL.<br>Petitioners,<br><br>v.<br><br>U.S. ENVIRONMENTAL<br>PROTECTION AGENCY, ET AL.<br>Respondents. | Case No. 15-3831 (and related cases: 15-3751, 15-3799, 15-3817, 15-3820, 15-2822, 15-3823, 15-3837, 15-3839, 15-3850, 15-3853, 15-3858, 15-3885, 15-3887, 15-3948)<br><br>In Re: Environmental Protection Agency and Department of Defense, Final Rule: Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054, published June 29, 2015 (MCP No. 135) |

## NORTH DAKOTA ET AL.'S PETITION FOR REHEARING *EN BANC*
## IN NO. 15-3831

PAUL M. SEBY
Special Assistant
Attorney General
Greenberg Traurig, LLP
1200 17th Street, Ste. 2400
Denver, CO 80202
Phone: (303) 572-6584
Fax: (720) 904-6151
sebyp@gtlaw.com

WAYNE K. STENEHJEM
Attorney General
JENNIFER L. VERLEGER
Assistant Attorney General
Office of Attorney General
500 N. 9th Street
Bismarck, ND 58501
Phone: (701) 328-2925
wstenehjem@nd.gov
jverleger@nd.gov

*Counsel for Petitioner State of North Dakota*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION AND RULE 35 STATEMENT ................................................1

BACKGROUND ................................................................................................3

ARGUMENT ....................................................................................................5

      A.     Rehearing *en banc* is warranted because the Panel Decision was
fractured, and no legal theory commanded a majority.........................6

      B.     The Panel Decision conflicts with decisions of other courts of
appeals. ..............................................................................................9

      C.     *En banc* review is warranted because the underlying dispute in
this case is of significant national importance. ..................................12

      D.     A ruling of appellate jurisdiction creates immediate tension
with pending district court litigation in another circuit......................14

CONCLUSION ...............................................................................................15

*DEN 99032436v8*

# TABLE OF AUTHORITIES

## Cases

*Am. Petroleum Inst. v. Johnson*,
   541 F. Supp. 2d 165 (D.D.C. 2008)....................................................................4

*Crown Simpson Pulp Co. v. Costle*,
   445 U.S. 196 (1980)......................................................................................12

*Decker v. Nw. Envtl. Def. Ctr.*,
   133 S. Ct. 1326 (2013)..................................................................................14

*In re Deepwater Horizon*,
   753 F.3d 516 (5th Cir. 2014) .........................................................................9

*In re E.P.A.*,
   803 F.3d 804 (6th Cir. 2015) ........................................................................13

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985)......................................................................................6

*Friends of the Everglades v. U.S. E.P.A.*,
   699 F.3d 1280 (11th Cir. 2012) ...................................................................12

*Grutter v. Bollinger*,
   288 F.3d 732 (6th Cir. 2002) *aff'd,* 539 U.S. 306 (2003)...................................8

*Hess v. Port Auth. Trans–Hudson Corp.*,
   513 U.S. 30 (1994)......................................................................................13

*In re: U.S. Dep't of Defense and U.S. E.P.A. Final Rule: Clean Water
   Rule: Definition of "Waters of the United States,"*
   80 Fed. Reg. 37,054 (June 29, 2015), No. 15-3751, slip op.
   (6th Cir. Feb. 22, 2016)...............................................................1, 6, 7, 8, 10, 15

*Iowa League of Cities v. E.P.A.*,
   711 F.3d 844 (8th Cir. 2013) ..................................................................10, 11

*Lake Cumberland Trust, Inc. v. E.P.A*,
   954 F.2d 1218 (6th Cir. 1992) .......................................................................4

*Narragansett Elec. Co. v. U.S. E.P.A.*,
  407 F.3d 1 (1st Cir. 2005) ............................................................4

*Nat'l Pork Producers Council v. EPA*,
  635 F.3d 738 (5th Cir. 2011) .......................................................3

*National Cotton Council v. U.S. E.P.A.*,
  553 F.3d 927, 933 (6th Cir. 2009) ..........................................1, 4, 8

*Natural Res. Def. Council, Inc. v. Abrahams*,
  355 F.3d 179 (2d Cir. 2004) .........................................................3

*Natural Res. Def. Council, Inc. v. Callaway*,
  392 F. Supp. 685 (D.D.C. 1975) ...................................................4

*Natural Res. Defense Council, Inc. v. U.S. E.P.A.*,
  673 F.2d 400 (D.C. Cir. 1982) ....................................................11

*Nichols v. United States*,
  511 U.S. 738 (1994) ....................................................................9

*North Dakota, et al. v. EPA*,
  No. 15-2552 (8th Cir.) .................................................................5

*North Dakota v. E.P.A.*,
  No. 3:15-cv-00059-RRE-ARS, 2015 WL 5060744 (D.N.D. Aug.
  27, 2015) ...............................................................2, 10, 14, 15

*Nw. Envtl. Advocates v. U.S. E.P.A.*,
  537 F.3d 1006 (9th Cir. 2008) ...................................................12

*Rapanos v. United States*,
  547 U.S. 715 (2006) ..................................................................14

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*,
  531 U.S. 159 (2001) ..................................................................13

*Virginia Electric & Power Co. v. Costle*,
  566 F.2d 446 (4th Cir. 1977) ......................................................11

*Wallace v. FedEx Corp.*,
  764 F.3d 571 (6th Cir. 2014) .....................................................6, 8

iii

**Statutes**

5 U.S.C. § 704 ................................................................................................3

33 U.S.C. § 1369(b)(1)............................................................................1, 2, 4, 7

**Other Authorities**

80 Fed. Reg. 37,054 (June 29, 2015) ..........................................................1, 3

Consolidation Order, MCP 135 (July 29, 2015)..........................................1, 5

F.R.A.P. 35(b)(1)(B) ..................................................................................2, 5, 9

Press Release, Environmental Protection Agency, Clean Water Rule
    Protects Streams and Wetlands Critical to Public Health,
    Communities, and Economy (May 27, 2015), available at
    http://yosemite.epa.gov/opa/admpress.nsf/0/62295CDDD6C6B456
    852 57E52004FAC97 ..........................................................................13

DEN 99032436v8

## INTRODUCTION AND RULE 35 STATEMENT

Petitioners are before this Court pursuant to an order of the Judicial Panel on Multi-District Litigation consolidating twelve separate actions brought in eight circuit courts of appeals. Consolidation Order, MCP 135 (July 29, 2015). In a fractured decision denying multiple motions to dismiss for lack of subject matter jurisdiction, the panel assigned to this case ("Panel") found appellate jurisdiction under 33 U.S.C. § 1369(b)(1) ("CWA § 509(b)") over all these challenges to the controversial Army Corps of Engineers ("Corps") and Environmental Protection Agency ("EPA") Final Rule: Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("WOTUS Rule" or "Rule").

This case presents a textbook example of a decision meriting *en banc* review for three principal reasons. First, the Panel issued three distinct opinions, including a dissent by Judge Keith, who would have found no appellate jurisdiction, and a concurrence by Judge Griffin who stated that there should be no appellate jurisdiction under the language of the statute but felt bound by wrongly-decided circuit precedent: "But for *National Cotton* [*Council v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009)], I would find jurisdiction lacking." Order, *In re: U.S. Dep't of Defense and U.S. E.P.A. Final Rule: Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015)*, No. 15-3751, slip op. at 27 (6th Cir. Feb. 22, 2016) (recommended for publication) ("Panel Decision").

Second, the issue presented is one of exceptional significance both because of the great national and public importance of the underlying dispute—the validity of the sweeping and controversial WOTUS Rule—and because a finding of appellate jurisdiction by this Court is contrary to U.S. District Court of North Dakota Chief District Judge Ralph R. Erickson's finding that jurisdiction is proper in the district courts, in a challenge to the WOTUS Rule brought by Petitioners. *See North Dakota v. E.P.A.*, No. 3:15-cv-00059-RRE-ARS, 2015 WL 5060744 (D.N.D. Aug. 27, 2015) (publication pending) (also granting Petitioners' request for a preliminary injunction of the WOTUS Rule).[1]

And finally, the Panel Decision conflicts with decisions of the Eleventh and Ninth Circuits, and unnecessarily expands carefully crafted decisional language used by the Eighth, Fourth, and D.C. Circuits, thereby "conflict[ing] with the authoritative decisions of other United States Courts of Appeals that have addressed the issue." F.R.A.P. 35(b)(1)(B).

The issue presented is whether the challenges to the WOTUS Rule fall within one of the enumerated categories of cases for which original and exclusive jurisdiction rests in the circuit courts of appeals under CWA § 509(b)(1), 33 U.S.C. § 1369(b)(1). Petitioners maintain that it does not, and that jurisdiction

---

[1] Petitioners are The States of North Dakota, Alaska, Arizona, Arkansas, Colorado, Idaho, Missouri, Montana, Nebraska, Nevada, South Dakota, and Wyoming, and the New Mexico Environment Department and New Mexico State Engineer. Petitioners filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on October 2, 2015, Doc. 55 (Petitioners' Motion).

2

over these cases is properly vested in the United States district courts under the Administrative Procedures Act ("APA"), 5 U.S.C. § 704.

## BACKGROUND

This case involves a challenge to the EPA's and Corps' (collectively, "Agencies") latest attempt to define the boundaries of their authority to regulate under the Clean Water Act ("CWA")—promulgation of the WOTUS Rule. The Agencies contend that the WOTUS Rule does not "establish any regulatory requirement," but rather "is a definitional rule that clarifies the scope of 'waters of the United States,'" a term used to define the CWA's regulatory reach. 80 Fed. Reg. at 37,054.

It is a basic tenet of administrative law that the courts of appeals do not have subject matter jurisdiction to hear challenges to agency rulemaking—such as the Agencies' promulgation of the WOTUS Rule—absent a clear and specific statutory grant. *See Natural Res. Def. Council, Inc. v. Abrahams*, 355 F.3d 179, 192-93 (2d Cir. 2004) ("[A]bsent a specific grant of statutory authority elsewhere, subject matter jurisdiction regarding review of agency rulemaking falls to the district courts[.]"); *See also Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755 (5th Cir. 2011) ("The CWA establishes a bifurcated jurisdictional scheme whereby courts of appeals have jurisdiction over some categories of challenges to EPA action, and the district courts retain jurisdiction over other[s.]"). Thus,

subject matter jurisdiction to review the Agencies' promulgation of the WOTUS Rule is vested in the district courts absent a specific statutory grant in the CWA providing otherwise.

The judicial review provision of the CWA only provides for direct review in the courts of appeals of seven specified actions taken by the EPA Administrator, including two that the Agencies have argued are relevant here: action "(E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345," and action "(F) in issuing or denying any permit under section 1342[.]"  33 U.S.C. § 1369(b)(1).  Any action taken by the Administrator that does not fit within these categories or any action taken by another agency—such as the Corps—is subject to review in district court.  *Nat'l Cotton*, 553 F.3d at 933 (quoting *Lake Cumberland Trust, Inc. v. E.P.A*, 954 F.2d 1218, 1222 (6th Cir. 1992) ("Congress did not intend court of appeals jurisdiction over all EPA action taken pursuant to the [CWA]."));  *Narragansett Elec. Co. v. U.S. E.P.A.*, 407 F.3d 1, 8 (1st Cir. 2005) (recognizing availability of judicial review in district court of final agency actions under the APA).  Challenges to prior agency actions defining "waters of the United States" have *always* been heard by the district courts.   *See Natural Res. Def. Council, Inc. v. Callaway*, 392 F. Supp. 685 (D.D.C. 1975); *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165 (D.D.C. 2008).

Although Petitioners believe jurisdiction lies with the district courts, they

elected to protectively file a petition for review in the Eighth Circuit along with their challenge to the WOTUS Rule in the federal District of North Dakota, *North Dakota, et al. v. EPA*, No. 15-2552 (8th Cir.), given the strict time limitation for seeking review under CWA § 509(b).  Petitioners' Eighth Circuit case was then consolidated with petitions for review filed in other circuits and transferred to this Court.  *See* Consolidation Order, MCP 135 (July 29, 2015).  Petitioners filed a motion to dismiss with this Court, arguing their challenge to the WOTUS Rule should continue to be considered by the district court.  In the Panel Decision, the Court denied Petitioners' motion to dismiss.  Petitioners now seek a rehearing of this denial before the whole Court *en banc*.

## ARGUMENT

Under F.R.A.P. 35(b)(1)(B), a decision may be reheard *en banc* when "the proceeding involves one or more questions of exceptional importance . . . for example . . .  if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue."  This case squarely meets that requirement and merits rehearing.

Further, this case is procedurally suitable for rehearing *en banc* under Sixth Circuit rules and precedent.  The Panel Decision denying the motions to dismiss was recommended for publication, and thus will carry precedential effect for

5

dispositive motions unless it is vacated. "[I]f a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing *en banc*." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014). Otherwise, such a challenge will be waived. *Id.*[2]

## A. Rehearing *en banc* is warranted because the Panel Decision was fractured, and no legal theory commanded a majority.

Rehearing by the entire Court is appropriate given the unusual nature of the Panel Decision, where each Panel member wrote separately and no single legal theory commanded a majority of the Panel members. Judge McKeague, who delivered the decision of the panel, found this Court has jurisdiction, stating jurisdiction over challenges to agency action rests presumptively with the appellate courts under subsections (E) and (F) unless movants "identify any particular circumstances or practical considerations that would justify [a] holding that adjudication of the instant petitions for judicial review in the various district courts would better serve Congress's purposes." Panel Decision, slip op. at 1, 18.[3]

Judge Griffin concurred only in the judgment, stating "it is illogical and unreasonable to read the text of either subsection (E) or (F) as creating jurisdiction

---

[2] Seeking a panel rehearing would be futile. Judge Griffin, who provided a necessary vote in favor of appellate jurisdiction, was convinced that the outcome was governed by a wrongly-decided precedent that may only be overruled through an *en banc* proceeding, and there have been no intervening changes of law that would justify panel rehearing.

[3] Even Judge McKeague conceded that "[o]n its face, the Agencies' argument is not compelling." Panel Decision, slip op. at 7. "Yet, even where statutory language may seem unambiguous, 'plain meaning, like beauty, is sometimes in the eye of the beholder.'" *Id.* at 6 (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 737 (1985)).

in the courts of appeals for these issues." *Id.* at 20.  But he nonetheless felt bound by an earlier ruling by a panel of this Court in *National Cotton*, which he read as creating "a broad authorization to the courts of appeals to review *anything* relating to permitting notwithstanding the statutory language to the contrary." *Id.* at 29 (emphasis in original).  "*National Cotton's* jurisdictional reach, in my view, has no end." *Id.*  Although he rejected jurisdiction under subsection (E), he felt bound by *National Cotton* to find jurisdiction under subsection (F). *Id.* at 26, 30.

Judge Keith, in dissent, agreed "with Judge Griffin's reasoning and conclusion that, under the plain meaning of the statute, neither subsection (E) nor subsection (F) of 33 U.S.C. § 1369(b)(1) confers original jurisdiction on the appellate courts." *Id.* at 32.  However, Judge Keith dissented because he did not read the jurisdictional holding in *National Cotton* as broadly as Judge Griffin, arguing instead that "[w]hile *National Cotton* expanded the scope of subsection (F) to cover rules "*regulating*" or "*governing*" permitting procedures, it did not expand that subsection to cover all rules "*relating*" to those procedures, such as the one at issue here." *Id.* (emphasis in original).  Judge Keith's reasoning parallels that of Petitioners' motion to dismiss, which argued that *National Cotton's* holding could not possibly be as broad as asserted by the government, but instead must be read in the context of its facts, the precedent it cites, and its explicit acknowledgement that "Congress did not intend court of appeals jurisdiction over all EPA actions taken

7

pursuant to the [CWA]." *National Cotton*, 553 F.3d at 933.

This fractured analysis is bound to create confusion as future panels attempt to apply the Panel Decision to new situations that arise. The Panel Decision unnecessarily adopted the broadest possible reading of *National Cotton* and explicitly rejected the "facial appeal" of the argument that "Congress must be held to say what it means and mean what it says." Slip op. at 11. Future courts in this Circuit will be bound to adopt this expansive interpretation of CWA § 509 until this Court, sitting *en banc*, or the U.S. Supreme Court overrules it. *Wallace*, 764 F.3d at 58 ("In the regular course of events, one panel of this court cannot overrule another panel's published decision."). Although the Panel Decision is now binding precedent in this Circuit, Petitioners remain persuaded that the dissent's reasoning is a better reading of *National Cotton*.

Moreover, even if the Court ultimately adopts the broadest reading of CWA appellate jurisdiction, an *en banc* decision has the opportunity clear up any confusion caused by the three distinct Panel opinions. When no single opinion commands the majority of the court, later courts can struggle to apply the reasoning of the court to a new set of facts and issues. *See Grutter v. Bollinger*, 288 F.3d 732, 785 (6th Cir. 2002) *aff'd,* 539 U.S. 306 (2003) ("when it is so unclear what the [] holding would be in a fractured court decision, there may not be one"). "This degree of confusion following a splintered decision . . . is itself a

8

reason for reexamining that decision." *Nichols v. United States*, 511 U.S. 738, 746 (1994); *see also In re Deepwater Horizon*, 753 F.3d 516, 518 (5th Cir. 2014) (Clement, J., dissenting from denial of rehearing *en banc*) ("This court's decisions thus far have suffered from divided reasoning . . . Reading the published opinions together with the district court's orders, it was clear that no two judges agreed on any legal basis for affirming.").

### B. The Panel Decision conflicts with decisions of other courts of appeals.

"[A] proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue." F.R.A.P. 35(b)(1)(B). Although Judge McKeague claimed his analysis was a logical outgrowth of the decisions of other courts of appeals expanding jurisdiction under CWA § 509(b), it is in fact a sharp break with those courts' consistent holdings that jurisdiction must be tightly tied to one of the categories listed in CWA § 509(b).

This circuit split is particularly troubling as the combined petitions on which the Panel ruled originated in multiple circuits and were randomly assigned to the Sixth Circuit. Petitioners consider the conflict created with the Eighth Circuit, where they are currently litigating in the U.S. District Court for the District of North Dakota, to be the most concerning. That district court found that the

9

WOTUS Rule does not fall within one of the seven enumerated actions over with the appellate courts have jurisdiction. *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *3, 7-8. In addressing subsection (F) of CWA § 509(b) (authorizes direct court of appeals review of agency actions "issuing or denying any permit"), the district court concluded that "the Rule at issue is tangential to issuance or denial of a permit—a classic red herring, [and] [u]nder these circumstances, original jurisdiction lies in this court and not the court of appeals." *Id.* at *3.

Although the Panel Decision claimed that the Eighth Circuit had "followed suit" in adopting a very loose reading of the language of the CWA, slip. op. at 9, in fact, the holding in *Iowa League of Cities* is far narrower than the Panel Decision here, and perfectly consistent with a reasonable and textualist reading of the CWA. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844 (8th Cir. 2013). In that case, EPA attempted to impose an effluent limitation on certain municipal sewer authorities through an informal process, rather than through APA rulemaking. One of the enumerated agency actions subject to direct appellate review under CWA § 509(b), subsection, (E), is action "approving or promulgating any effluent limitation." The issue in *Iowa League of Cities* was whether the term "promulgating" restricts direct appellate review to regulations that were properly approved under the APA, or whether it extends to actions that have the same practical effect and ought to have been promulgated under the APA. The Eight

Circuit rejected a "narrow interpretation [which] would allow direct appellate review only of rules formally promulgated through notice and comment procedures," stating "it would be more appropriate to interpret 'promulgating' to include agency actions that are 'functionally similar' to a formal promulgation." *Id*. at 861. Thus, in the Eighth Circuit, to fall under CWA § 509(b), an agency action must be "functionally similar" to one of the enumerated categories—a far cry from the presumptive jurisdiction established by the Panel Decision as no Panel member found the WOTUS Rule to be "functionally similar" to a § 509(b) item.

The Panel Decision's overbroad interpretations of *Virginia Electric & Power Co. v. Costle*, 566 F.2d 446 (4th Cir. 1977) and *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 673 F.2d 400 (D.C. Cir. 1982) create conflicts as well. *Virginia Electric* held that the phrase "other limitations" in CWA § 509(b)(E) allowed review of limitations that were "closely related" to effluent limitations, particularly when they were promulgated along with regulations that were subject to appellate review and would otherwise require a bifurcated review process. 566 F.2d at 450. *Natural Resources Defense Council* dealt with a regulation laying out "a complex set of procedures for issuing or denying NPDES permits," an issue tightly tied to the matter of permits, unlike the WOTUS Rule. The Eleventh

11

Circuit has expressly rejected a broad reading of these cases. *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1287 (11th Cir. 2012).

The conflict with the Ninth Circuit is even clearer. That court stated, "[w]e do not lightly hold that we have jurisdiction under section 509(b)(1)," and "[w]e have "counseled against its expansive application," as "no sensible person would speak with [the] detail [used by Congress] otherwise." *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1015 (9th Cir. 2008) (internal quotations omitted). Jurisdiction may only be found under the provision regarding effluent or other "limitations" if the regulation clearly imposes a limitation or, under the provision regarding the denial of a permit, if the "EPA actions [are] 'functionally similar' to the denial of permits." *Id*. at 1016 (quoting *Crown Simpson Pulp Co.*, 445 at 196).

The Panel Decision is thus in either immediate tension or direct conflict with decisions of the Fourth, Eighth, Ninth, Eleventh, and D.C. Circuits.

### C.    *En banc* review is warranted because the underlying dispute in this case is of significant national importance.

This case is also of exceptional significance, without regard to the clarity of the legal precedent it sets, because the final decision of this Court (or whatever court ultimately hears this challenge) and the final decision on the merits of Petitioners' challenge will govern the uses of lands and waters across the United States. The Panel, prior to considering the jurisdictional issue, granted a nationwide stay against the WOTUS Rule, citing the "sheer breadth of the ripple

12

effects caused by the Rule's definitional changes." *In re E.P.A.*, 803 F.3d 804, 808 (6th Cir. 2015).

The WOTUS Rule represents a serious intrusion into state sovereignty, because "[r]egulation of land use is a function traditionally performed by local governments." *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 174 (2001) (quoting *Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 44 (1994)). When the CWA is interpreted expansively "to claim federal jurisdiction over ponds and mudflats" this "would result in a significant impingement of the States' traditional and primary power over land and water use." *Id.* "The entire land area of the United States lies in some drainage basin, and an endless network of visible channels furrows the entire surface, containing water ephemerally wherever the rain falls[.]" *Rapanos v. United States*, 547 U.S. 715, 722 (2006). These circumstances cry out for a clear regulation delineating the lawful boundaries of "waters of the United States."

In sum, the WOTUS Rule is a matter of enormous importance, both to state governments, which are at risk of losing much of their core authority to govern local land use issues, and to regulated parties who face expensive and intrusive permitting obligations. If this Court were found to be without jurisdiction, its decisions in this case would be void—with potentially disastrous effects on those who were forced to rely upon it—and potentially resulting in a considerable waste

of judicial and party time and resources.  A rehearing *en banc* will significantly reduce reversal risk and provide an opportunity to clarify or overrule *National Cotton*, and ameliorate the uncertainty caused by the divided Panel Decision.

### D.    A ruling of appellate jurisdiction creates immediate tension with pending district court litigation in another circuit.

The Panel Decision conflicts with the assertion of jurisdiction in the District of North Dakota discussed above because CWA § 506(b) jurisdiction, where it applies, is exclusive.  *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1334 (2013) ("Where [appellate] review is available, it is the exclusive means of challenging actions covered by the statute, § 1369(b)(2).").

The District of North Dakota found it has jurisdiction in this instance and issued a preliminary injunction.  *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *3, 7-8.[4]  The majority of this Panel would likely have agreed that jurisdiction properly lays in the district court if they felt free to overrule or narrow *National Cotton*.  *Compare Id.* at *2 ("If the exceptionally expansive view [of § 509(b)] advocated by the government is adopted it would encompass virtually all EPA actions under the [CWA].") *with* Panel Decision, slip op. at 29 (Griffin, J., concurring) (observing that "*National Cotton's* jurisdictional reach, in my view, has no end . . . . [and] is a broad authorization to the court of appeals to review

---

[4] EPA has now filed a Motion to Dismiss in that case, on the basis of this Court's Panel Decision. Federal Defendants' Motion to Dissolve Preliminary Injunction and Dismiss Amended Complaint, *North Dakota v. U.S. E.P.A.*, No. 3:15-cv-00059-RRE-ARS, Doc. 141 (D.N.D. March 3, 2016).

14

*anything* relating to permitting notwithstanding the statutory language to the contrary." (emphasis in original)).

## CONCLUSION

The Panel Decision is in conflict with existing case law in other circuits, including that of the Eighth Circuit. The fractured Panel Decision is particularly concerning to Petitioners who are currently litigating in a district court in North Dakota, a court within the Eight Circuit. Further, the outcome of that district court case and this Court's decision on whether to rehear the issues addressed in the fractured Panel Decision *en banc* are of exceptional national and public importance to the governance of lands and waters of the United States and to state sovereignty. Accordingly, this case should be reheard *en banc*. If the Court grants this Petition for Rehearing *En Banc*, Petitioners respectfully request full *en banc* re-briefing of and oral argument on the questions presented herein.

15

**Respectfully submitted this 4th day of March, 2016.**


STATE OF NORTH DAKOTA

*/s/ Paul M. Seby*
Paul M. Seby
Special Assistant Attorney General
Greenberg Traurig, LLP
1200 17th Street Suite 2400
Denver, CO 80202
Phone: (303) 572-6584
Fax: (720) 904-6151
sebyp@gtlaw.com

Wayne K. Stenehjem
Attorney General
Jennifer L. Verleger
Assistant Attorney General
Office of Attorney General
500 N. 9th Street
Bismarck, ND 58501
Phone: (701) 328-2925
wstenehjem@nd.gov
jverleger@nd.gov

Attorneys for Petitioner State of North
Dakota

STATE OF ALASKA

*/s/ Chris Peloso (with permission)*
Chris Peloso
Assistant Attorney General
123 Fourth Street
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-2133
Facsimile: (907) 465-2520
Email: steve.mulder@alaska.gov
        chris.peloso@alaska.gov

Attorney for Petitioner State of Alaska

16

STATE OF ARIZONA

*/s/ John R. Lopez IV* (with permission)
John R. Lopez IV
Solicitor General
Office of the Arizona Attorney General
1275 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-8986
Facsimile: (602) 542-8308
Email: John.Lopez@azag.gov

Attorney for Petitioner State of Arizona

STATE OF COLORADO

*/s/ Frederick R. Yarger* (with
permission)
Frederick R. Yarger
Solicitor General
Glen E. Roper
Deputy Solicitor General
Colorado Attorney General's Office
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6168
Email: fred.yarger@state.co.us
        glenn.roper@state.co.us

Attorneys for Petitioner State of
Colorado

STATE OF IDAHO

*/s/ Douglas M. Conde* (with permission)
Douglas M. Conde
Deputy Attorney General
Office of the Attorney General
Department of Environmental Quality
1410 N. Hilton, 2nd Floor
Boise, ID 83706
Telephone:  (208) 373-0494
Facsimile: (208) 373-0481
Email: douglas.conde@deq.idaho.gov

Attorney for Petitioner State of Idaho

STATE OF MISSOURI

*/s/ Jack McManus* (with permission)
Jack McManus
Chief Counsel
Agriculture and Environment Division
Office of the Missouri Attorney General
PO Box 899
Jefferson City, MO 65102
Telephone:  (573) 751-1622
Email: jack.mcmanus@ago.mo.gov

Attorney for Petitioner State of Missouri

STATE OF MONTANA

*/s/ Alan Joscelyn (with permission)*
Alan Joscelyn
Chief Deputy Attorney General
215 North Sanders
PO Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-3442
Facsimile: (406) 444-3549
Email: AlanJoscelyn@mt.gov

Attorney for Petitioner State of Montana

STATE OF NEBRASKA

*/s/ Justin D. Lavene (with permission)*
Justin D. Lavene
Assistant Attorney General
Dave Bydalek
Deputy Attorney General
2115 State Capitol Building
PO Box 98920
Lincoln, NE 68509-8920
Telephone:  (402) 471-2682
Facsimile: (402) 471-3297
Email: justin.lavene@nebraska.gov

Attorneys for Petitioner State of Nebraska

STATE OF NEVADA

*/s/ Lawrence VanDyke (with permission)*
Lawrence VanDyke
Solicitor General
Office of the Attorney General
100 N. Carson Street
Carson City, NV  89701
Telephone:  (775) 684-1100
Email:  LVanDyke@ag.nv.gov

Attorney for Plaintiff State of Nevada

STATE OF SOUTH DAKOTA

*/s/ Charles D. McGuigan (with permission)*
Charles McGuigan
Chief Deputy Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Facsimile: (605) 773-4106
Email: Charles.McGuigan@state.sd.us

Attorney for Plaintiff State of South Dakota

STATE OF WYOMING

*/s/ David Ross (with permission)*
James Kaste
Deputy Attorney General
David Ross
Senior Assistant Attorney General

NEW MEXICO ENVIRONMENT DEPARTMENT

*/s/ Jeffrey M. Kendall (with permission)*
Jeffrey M. Kendall
General Counsel
Lara Katz

18

Wyoming Attorney General's Office
2320 Capitol Ave.
Cheyenne, WY 82002
Telephone: (307) 777-6946
Facsimile: (307) 777-3542
Email: james.kaste@wyo.gov
         dave.ross@wyo.gov

Attorneys for Petitioner State of
Wyoming

NEW MEXICO STATE ENGINEER

*/s/ Gregory C. Ridgley* (with
permission)
Gregory C. Ridgley
General Counsel
Matthias L. Sayer
Special Counsel
130 South Capitol Street
Concha Ortiz y Pino Building
P.O. Box 25102
Santa Fe, NM 57504-5102
Telephone: (505) 827-6150
Facsimile: (505) 827-3887
Email: greg.ridgley@state.nm.us
         matthiasl.sayer@state.nm.us

Attorneys for Petitioner New Mexico
State Engineer

Assistant General Counsel
1190 St. Francis Drive, Suite N-4050
Santa Fe, NM 87505
Telephone: (505) 827-2855
Facsimile: (505) 827-1628
Email: jeff.kendall@state.nm.us

Attorneys for Petitioner New Mexico
Environment Department

STATE OF ARKANSAS

*/s/ Dara A. Hall* (with permission)
Dara A. Hall
Assistant Attorney General
CURAD/Environmental Division
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
Direct Dial:  (501) 682-5310
Fax: (501) 682-7383
Email: dara.hall@arkansasag.gov

Attorney for State of Arkansas

19

## CERTIFICATE OF SERVICE

I certify that on the 4th day of March, 2016, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users, or if they are not, by placing a true and correct copy in the United States mail, postage prepaid to their address of record.

*/s/ Paul M. Seby*

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  February 22, 2016

Ms. Loren L. AliKhan
Office of the Attorney General
of the District of Columbia
441 Fourth Street, N.W.
Washington, DC 20001

Mr. Andrew B. Ayers
Office of the Attorney General
of New York
The Capital
Albany, NY 12054

Mr. Philip Bein
Office of the Attorney General
of New York
The Capital
Albany, NY 12054

Ms. Lorelei M Bensel
Oregon Department of Justice
1162 Court Street, N.E.
Salem, OR 97301

Mr. Timothy S. Bishop
Mayer Brown
71 S. Wacker Drive
Chicago, IL 60606

Mr. Adam Franklin Blalock
Hopping Green & Sams
119 S. Monroe Street
Suite 300
Tallahassee, FL 32301

Mr. Daniel Paul Bock
Office of the Attorney General
Environmental Protection Division
525 W. Ottawa Street
Suite 640 G. Mennen Williams Building
Lansing, MI 48909-0000

Mr. Edward Grant Bohlen
Office of the Attorney General
of Hawaii
465 S. King Street
Honolulu, HI 96813

Ms. Kay R. Bonza
New Mexico Environment Department
121 Tijeras Avenue, N.E.
Suite 1000
Albuquerque, NM 87102

Mr. Andrew Lynn Brasher
Office of the Attorney General
of Alabama
501 Washington Avenue
Montgomery, AL 36111

Ms. Janette K. Brimmer
Earthjustice
705 Second Avenue
Suite 203
Seattle, WA 98104-0000

Mr. Craig A. Bromby
North Carolina Department of Environment and Natural Resources
215 W. Jones Street
Raleigh, NC 27603

Ms. Karma B. Brown
Hunton & Williams
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Ms. Kristy A. N. Bulleit
Hunton & Williams
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Mr. John J. Bursch
Warner, Norcross & Judd
111 Lyon Street, N.W.
Suite 900
Grand Rapids, MI 49503

Mr. Jeffrey A. Chanay
Office of the Attorney General
of Kansas
120 S.W. 10th Street
Second Floor
301
Topeka, KS 66612-1597

Ms. Jennifer C. Chavez
Earthjustice
1625 Massachusetts Avenue, N.W.
Suite 702
Washington, DC 20036

Mr. David William Childs
Hopping Green & Sams
119 S. Monroe Street
Suite 300
Tallahassee, FL 32301

Mr. Douglas M. Conde
Office of the Attorney General
of Idaho
P.O. Box 83720
Boise, ID 83720-0010

Mr. John Michael Connolly
Consovoy McCarthy
3033 Wilson Boulevard
Suite 700
Arlington, VA 22201

Mr. William Spencer Consovoy
Consovoy McCarthy
3033 Wilson Boulevard
Suite 700
Arlington, VA 22201

Mr. Christopher Kaltman DeScherer

Southern Environmental Law Center
43 Broad Street
Suite 300
Charleston, SC 29401

Ms. Amy J. Dona
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Mr. Parker Douglas
Office of the Attorney General
of Utah
P.O. Box 140857
Salt Lake City, UT 84114-0857

Mr. Andrew J. Doyle
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Mr. Gregory T. Dutton
Office of the Attorney General
of Kentucky
1024 Capital Center Drive
Suite 200
Frankfort, KY 40601

Mr. P. Clayton Eubanks
Office of the Attorney General
of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105

Ms. Jamie Leigh Ewing
Office of the Attorney General
of Arkansas
323 Center Street
Suite 200
Little Rock, AR 72201-2610

Mr. Thomas Molnar Fisher
Office of the Attorney General
of Indiana

302 W. Washington Street
Fifth Floor
Indianapolis, IN 46204-0000

Mr. Paul Garrahan
Oregon Department of Justice
Natural Resources Section
1515 S.W. Fifth Avenue
Suite 410
Portland, OR 97201

Mr. Kevin A. Gaynor
Vinson & Elkins
2200 Pennsylvania Avenue, N.W.
Suite 500 W.
Washington, DC 20037

Mr. Jonathan A Glogau
Office of the Attorney General
Complex Litigation
107 W. Gaines Street
Tallahassee, FL 32399-1050

Ms. Britt C. Grant
Office of the Attorney General
of Georgia
40 Capitol Square, S.W.
Suite 132
Atlanta, GA 30334

Ms. Sarah A. Greenwalt
Office of the Attorney General
of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105

Mr. Burke W. Griggs
Office of the Attorney General
of Kansas
120 S.W. 10th Street
Second Floor
Topeka, KS 66612-1597

Mr. Joel Mitchell Gross
Arnold & Porter
601 Massachusetts Avenue, N.W.

Washington, DC 20001

Mr. Dara Andrew Hall
Office of the Attorney General
of Arkansas
323 Center Street
Suite 200
Little Rock, AR 72201-2610

Mr. Warren W. Harris
Bracewell
711 Louisiana Street
Suite 2300
Houston, TX 77002

Mr. Sam M Hayes
NC Department of Environmental Quality
1601 Mail Service Center
Raleigh, NC 27699-1601

Ms. Ruth Hamilton Heese
State of Alaska
Department of Law
123 Fourth Street
Sixth Floor
Juneau, AK 99801

Ms. Kimberly S. Hermann
Southeastern Legal Foundation
2255 Sewell Mill Road
Marietta, GA 30062

Ms. Megan Hinkle
127 Peachtree Street, N.E.
Atlanta, GA 30303

Mr. Andrew J. Hirth
Office of the Attorney General
of Missouri
P.O. Box 899
Jefferson City, MO 65102

Mr. M. Reed Hopper
Pacific Legal Foundation
930 G Street
Suite 200

Sacramento, CA 95814

Mr. Richard A. Horder
Kazmarek Mowrey Cloud Laseter
1230 Peachtree Street, N.E.
Suite 3600
Atlanta, GA 30309

Mr. Mohammad O Jazil
Hopping Green & Sams
119 S. Monroe Street
Suite 300
Tallahassee, FL 32301

Mr. Steven Beauregard Jones
Louisiana Deptartment of Justice
Civil Division-Environmental Section
1885 N. Third Street
Sixth Floor
Baton Rouge, LA 70802

Mr. Alan L. Joscelyn
Office of the Attorney General
of Montana
P.O. Box 201401
Helena, MT 59620-1401

Mr. James Kaste
Office of the Attorney General
of Wyoming
2320 Capitol Avenue
Cheyenne, WY 82002

Ms. Karla Z. Keckhaver
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

Mr. Duncan Stuart Kemp IV
Louisiana Deptartment of Justice
Civil Division-Environmental Section
1885 N. Third Street
Sixth Floor
Baton Rouge, LA 70802

Mr. Jeffrey M. Kendall

State of New Mexico
1190 St. Francis Drive
Suite N-4050
Sante Fe, NM 87505

Mr. Michael B. Kimberly
Mayer Brown
1999 K Street, N.W.
Washington, DC 20006

Mr. Scot L. Kline
Office of the Attorney General
of Vermont
109 State Street
Montpelier, VT 05609-1001

Mr. Justin D. Lavene
Office of the Attorney General
of Nebraska
P.O. Box 98920
Lincoln, NE 68509

Mr. Ronald Lavigne
Office of the Attorney General
Ecology Division
P.O. Box 40117
Olympia, WA 98506

Mr. Steven J. Lechner
Mountain States Legal Foundation
2596 S. Lewis Way
Lakewood, CO 80227-0000

Mr. Elbert Lin
Office of the Attorney General
of West Virginia
1900 Kanawha Boulevard, E.
E-26
Charleston, WV 25305-0000

Mr. Benjamin S. Lippard
Vinson & Elkins
2200 Pennsylvania Avenue, N.W.
Suite 500 W.
Washington, DC 20037

Mr. Jon Michael Lipshultz
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Mr. John R. Lopez IV
Office of the Attorney General
of Arizona
1275 W. Washington Street
Phoenix, AZ 85007

Ms. Martha Mann
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 23986
Washington, DC 20026

Mr. S. Peter Manning
Office of the Attorney General
of Michigan
P.O. Box 30217
Lansing, MI 48116

Mr. Jeremy C Marwell
Vinson & Elkins
2200 Pennsylvania Avenue, N.W.
Suite 500 W.
Washington, DC 20037

Ms. Elizabeth P. McCarter
Office of the Attorney General
of Tennessee
P.O. Box 20207
Nashville, TN 37202

Ms. Kerry L. McGrath
Hunton & Williams
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Mr. Charles David McGuigan
Office of the Attorney General
of South Dakota
1302 E. Highway 14
Suite 1

Pierre, SD 57501-4106

Mr. John K. McManus
Office of the Attorney General
of Missouri
P.O. Box 899
Jefferson City, MO 65102

Mr. Matthew Bryan Miller
Office of the Attorney General
of Texas
P.O. Box 12548
Austin, TX 78711

Mr. Eric E. Murphy
Office of the Attorney General
of Ohio
30 E. Broad Street
17th Floor
Columbus, OH 43215

Ms. Jessica O'Donnell
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

Ms. Margaret I. Olson
Office of the Attorney General
of North Dakota
500 N. Ninth Street
Bismarck, ND 58501

Ms. Lee Ann Rabe
Office of the Attorney General
30 E. Broad Street
16th Floor
Columbus, OH 43215

Mr. Peter T. Reed
Office of the Attorney General
of Ohio
30 E. Broad Street
17th Floor
Columbus, OH 43215

Mr. Craig W. Richards
State of Alaska
Department of Law
1031 W. 4th Avenue
Suite 200
Anchorage, AK 99501

Mr. Gregory C. Ridgley
Office of the State Engineer
P.O. Box 25102
Santa Fe, NM 87504

Mr. John Quentin Melcher Riegel
National Association of Manufacturers
733 10th Street, N.W.
Suite 700
Washington, DC 20001

Ms. Kirsten S. P. Rigney
Office of the Attorney General
of Connecticut
55 Elm Street
Second Floor
Hartford, CT 06106

Mr. David Ross
Office of the Attorney General
of Wyoming
2320 Capitol Avenue
Cheyenne, WY 82002

Mr. Lowell Mark Rothschild
Bracewell & Patterson
111 Congress Avenue
Suite 2300
Austin, TX 78701-0000

Mr. James N. Saul
Lewis & Clark Law School
10015 S.W. Terwilliger Boulevard
Portland, OR 97219

Mr. Matthias L. Sayer
New Mexico Department of Game and Fish
1 Wildlife Way
Santa Fe, NM 87507

Mr. Seth Schofield
Office of the Attorney General Massachusetts
One Ashburton Place
18th Foor
Boston, MA 02108

Mr. Paul Martin Seby
Greenberg Traurig
1200 Seventeenth Street
Suite 2400
Denver, CO 80202

Ms. Jennifer Anne Simon
Kazmarek Mowrey Cloud Laseter
1230 Peachtree Street, N.E.
Suite 3600
Atlanta, GA 30309

Ms. Deborah Ann Sivas
Mills Legal Clinic
Environmental Law Clinic
559 Nathan Abbott Way
Stanford, CA 94305

Mr. Brooks Meredith Smith
Troutman Sanders
P.O. Box 1122
Richmond, VA 23218

Mr. James Emory Smith Jr.
Office of the Attorney General
of South Carolina
P. O. Box 11549
Columbia, SC 29211

Ms. Jennifer Ann Sorenson
Natural Resources Defense Council
111 Sutter Street
20th Floor
San Francisco, CA 94104-0000

Mr. Wayne K. Stenehjem
Office of the Attorney General
of North Dakota
500 N. Ninth Street

Bismarck, ND 58501

Ms. Alicia E. Thesing
Mills Legal Clinic
Environmental Law Clinic
559 Nathan Abbott Way
N150
Stanford, CA 94305

Mr. Andrew Turner
Hunton & Williams
2200 Pennsylvania Avenue, N.W.
Washington, DC 20037

Mr. Lawrence VanDyke
Office of the Attorney General
of Nevada
100 N. Carson Street
Carson City, NV 89701

Ms. Jennifer L. Verleger
Office of the Attorney General
of North Dakota
500 N. Ninth Street
Bismarck, ND 58501

Ms. Catherine Wannamaker
Southern Environmental Law Center
463 King Street
Suite B
Charleston, SC 29403

Mr. Justin T. Wong
Troutman Sanders
600 Peachtree Street, N.E.
Suite 5200
Atlanta, GA 30308

Ms. Mary Jo Woods
Office of the Attorney General
of Mississippi
P.O. Box 220
Jackson, MS 39205

Mr. Frederick Richard Yarger
Office of the Attorney General

Of Colorado
1300 Broadway
Tenth Floor
Denver, CO 80203

Ms. Tamara Zakim
Earthjustice
50 California Street
San Francisco, CA 94111

Re:
Case No. 15-3751/15-3799/15-3817/15-3820/15-3822/15-3823/15-3831/15-3837/15-3839/15-3850/15-3853/15-3858/15-3885/15-3887/15-3948/15-4159/15-4162/15-4188/15-4211/15-4234/15-4305/15-4404, *In re: Murray Energy Corporation v. EPA, et al*
Originating Case No. : EPA-HQ-OW-2011-0880

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's opinions together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

Enclosures

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0045p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

In re: UNITED STATES DEPARTMENT OF DEFENSE AND
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
FINAL RULE: CLEAN WATER RULE: DEFINITION OF
"WATERS OF THE UNITED SATES," 80 FED. REG. 37,054
(JUNE 29, 2015).

_____

MURRAY ENERGY CORPORATION (15-3751); STATE OF
OHIO, et al. (15-3799); NATIONAL WILDLIFE
FEDERATION (15-3817); NATURAL RESOURCES DEFENSE
COUNCIL, INC. (15-3820); STATE OF OKLAHOMA (15-
3822); CHAMBER OF COMMERCE OF THE UNITED STATES
OF AMERICA, et al. (15-3823); STATE OF NORTH
DAKOTA, et al. (15-3831); WATERKEEPER ALLIANCE
INC., et al. (15-3837); PUGET SOUNDKEEPER ALLIANCE,
et al. (15-3839); AMERICAN FARM BUREAU FEDERATION,
et al. (15-3850); STATE OF TEXAS, et al. (15-3853);
UTILITY WATER ACT GROUP (15-3858); SOUTHEASTERN
LEGAL FOUNDATION, INC., et al. (15-3885); STATE OF
GEORGIA, et al. (15-3887); ONE HUNDRED MILES, et al.
(15-3948); SOUTHEAST STORMWATER ASSOCIATION,
INC., et al. (15-4159); MICHIGAN FARM BUREAU (15-
4162); WASHINGTON CATTLEMEN'S ASSOCIATION (15-
4188); ASSOCIATION OF AMERICAN RAILROADS, et al.
(15-4211); TEXAS ALLIANCE FOR RESPONSIBLE GROWTH,
ENVIRONMENT, AND TRANSPORTATION (15-4234);
AMERICAN EXPLORATION & MINING ASSOCIATION (15-
4305); ARIZONA MINING ASSOCIATION, et al. (15-4404),

*Petitioners*,

*v.*

UNITED STATES DEPARTMENT OF DEFENSE, DEPARTMENT
OF THE ARMY CORPS OF ENGINEERS and UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

> Nos. 15-3751 /3799/ 3817/
> 3820/ 3822/ 3823/ 3831/
> 3837/ 3839/ 3850/ 3853/
> 3858/ 3885/ 3887/ 3948/
> 4159/ 4162/ 4188/ 4211/
> 4234/ 4305/ 4404

1

On Petitions for Review of Final Rule of the United States Department
of Defense and United States Environmental Protection Agency.

Judicial Panel on Multi-District Litigation, No. 135.

Argued:  December 8, 2015

Decided and Filed:  February 22, 2016

Before:  KEITH, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Eric E. Murphy, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus,
Ohio, for Petitioners.  Martha C. Mann, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondents.

McKEAGUE, J., delivered the opinion in which GRIFFIN, J., joined in the result.
GRIFFIN, J. (pp 19–31), delivered a separate opinion concurring in the judgment.  KEITH, J.
(pp. 32–33), delivered a separate dissenting opinion.

_____

## OPINION

_____

McKEAGUE, Circuit Judge.  This multi-circuit case consists of numerous consolidated
petitions challenging the validity of the "Clean Water Rule" recently published by the U.S. Army
Corps of Engineers and U.S. Environmental Protection Agency ("the Agencies").  The Clean
Water Rule is intended to clarify the scope of "the waters of the United States" subject to
protection under the Clean Water Act.  The Act provides that certain specified actions of the
EPA Administrator are reviewable directly in the U.S. Circuit Courts of Appeals.  Because of
uncertainty about whether the Agencies' adoption of the Clean Water Rule is among these
specified actions, parties challenging the Rule have filed petitions in both district courts and
circuit courts across the country.  Many of the petitions have been transferred to the Sixth Circuit
for consolidation in this action.  Many of the petitioners and other parties now move to dismiss
the very petitions they filed invoking this court's jurisdiction, contending this court lacks
jurisdiction to review the Clean Water Rule.

The movants find support for their position in the language of the Clean Water Act's judicial review provisions, which purport to define circuit court jurisdiction specifically and narrowly. Over the last 35 years, however, courts, including the Supreme Court and the Sixth Circuit, have favored a "functional" approach over a "formalistic" one in construing these provisions. These precedents support the Agencies' position that this court does have jurisdiction. The district courts that have confronted the jurisdictional question in this litigation have arrived at conflicting answers.[1] For the reasons that follow I conclude that Congress's manifest purposes are best fulfilled by our exercise of jurisdiction to review the instant petitions for review of the Clean Water Rule.

## I. BACKGROUND

Petitioners in these various actions, transferred to and consolidated in this court by the Judicial Panel on Multi-District Litigation for handling as a multi-circuit case, challenge the validity of a Final Rule adopted by respondents U.S. Army Corps of Engineers and U.S. Environmental Protection Agency, "the Clean Water Rule." 80 Fed. Reg. 37,054 (June 29, 2015). The Clean Water Rule clarifies the definition of "waters of the United States," as used in the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, "through increased use of bright-line boundaries" to make "the process of identifying waters protected under the Clean Water Act easier to understand, more predictable and consistent with the law and peer reviewed science, while protecting the streams and wetlands that form the foundation of our nation's water resources." 80 Fed. Reg. at 37,055. Petitioners contend that the definitional changes effect an expansion of respondent Agencies' regulatory jurisdiction and dramatically alter the existing balance of federal-state collaboration in restoring and maintaining the integrity of the nation's waters. Petitioners also contend the new bright-line boundaries used to determine which tributaries and waters adjacent to navigable waters have a "significant nexus" to waters protected under the Act are not consistent with the law as defined by the Supreme Court, and were adopted by a process not in conformity with the rulemaking requirements of the Administrative Procedures Act

---

[1] *See Murray Energy Corp. v. U.S. E.P.A.*, 2015 WL 5062506 (N.D. W.Va. Aug. 26, 2015) (holding jurisdiction lies in circuit court); *State of Georgia v. McCarthy*, 2015 WL 5092568 at *2–3 (S.D. Ga. Aug. 27, 2015) (same); *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *2 (D. N.D. Aug. 27, 2015) (holding jurisdiction lies in district court).

("APA"). The Agencies maintain that the requirements of the APA were met and that the Rule is a proper exercise of their authority under the Clean Water Act.

The Rule became effective on August 28, 2015. On October 9, 2015, however, we issued a nationwide stay of the Rule pending further proceedings in this action. *In re EPA and Dep't of Def. Final Rule,* 803 F.3d 804 (6th Cir. 2015). We found that petitioners had demonstrated a substantial possibility of success on the merits of their claims and that the balance of harms militated in favor of preserving the status quo pending judicial review.

Meanwhile, eight motions to dismiss have been filed by numerous petitioners and intervenors. The motions assert that judicial review is properly had in the district courts, not here. They contend the instant challenges to the Clean Water Rule do not come within the judicial review provisions of the Clean Water Act, 33 U.S.C. § 1369(b)(1).

Section 1369(b)(1) identifies seven kinds of action by the EPA Administrator that are reviewable directly in the circuit courts. Only two of the seven kinds of action listed in § 1369(b)(1) are implicated here, subsections (E) and (F). In its entirety, § 1369(b)(1) provides as follows:

(1) Review of the Administrator's action

(A) in promulgating any standard of performance under section 1316 of this title,

(B) in making any determination pursuant to section 1316(b)(1)(C) of this title,

(C) in promulgating any effluent standard, prohibition, or pretreatment standard under section 1317 of this title,

(D) in making any determination as to a State permit program submitted under section 1342(b) of this title,

(E) in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title,

(F) in issuing or denying any permit under section 1342 of this title, and

(G) in promulgating any individual control strategy under section 1314(l) of this title,

may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts business which is directly affected by such action upon application by such person.

Any such application shall be made within 120 days from the date of such determination, approval, promulgation, issuance or denial, or after such date only if such application is based solely on grounds which arose after such 120th day.

33 U.S.C. § 1369(b)(1).

Movants contend the EPA's and the Corps' adoption and promulgation of the Clean Water Rule is not action of the Administrator "in issuing or promulgating any effluent limitation or other limitation" or "in issuing or denying any permit" under § 1369(b)(1)(E) or (F). They contend the Clean Water Rule is simply a definitional rule and that neither the statutory language nor the legislative history evidences congressional intent to authorize direct review of such action in the circuit courts.

## II. ANALYSIS

### A. General Standards

The question of subject matter jurisdiction is a question of law the court addresses de novo. *Iowa League of Cities v. U.S. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013). That is, the Agencies' interpretation of the Clean Water Act is entitled to no deference in this regard. *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1285 (11th Cir. 2012).

Federal courts are courts of limited jurisdiction and have subject matter jurisdiction only as authorized by the Constitution and by Congress. *Id.* at 1289. Here, the court's authority to conduct direct review of the Agencies' challenged action, must be found, if at all, in the Clean Water Act, 33 U.S.C. § 1369(b)(1). *Id.* at 1285 (recognizing availability of direct circuit court review only over those actions specifically enumerated in § 1369(b)(1)). Not all actions taken under the Clean Water Act are directly reviewable in the circuit courts. *Nat'l Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009). Where review is available under § 1369(b)(1), "it is the exclusive means of challenging actions covered by the statute." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1334 (2013). Matters not reviewable under § 1369(b)(1) may be actionable in the district courts by other means. *See id.* (recognizing availability of private enforcement action under 33 U.S.C. § 1365); *Narragansett Elec. Co. v. U.S. E.P.A.*, 407

F.3d 1, 8 (1st Cir. 2005) (recognizing availability of judicial review in district court under the APA).

Whether subject matter jurisdiction lies in the circuit courts is governed by the intent of Congress. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 746 (1985). In determining the scope of circuit court jurisdiction Congress intended to prescribe under the Clean Water Act, the analysis must begin with the statutory language. *Id.* at 735. Yet, even where statutory language may seem unambiguous, "plain meaning, like beauty, is sometimes in the eye of the beholder." *Id.* at 737. The parties agree that subsections (E) and (F) are the only two provisions of § 1369(b)(1) that potentially apply.

**B. Statutory Language**

**1. *Subsection (E) – "Other Limitation"***

Movants contend the Rule's definition of "waters of the United States" is not, under § 1369(b)(1)(E), "an effluent limitation or other limitation" approved or promulgated under 33 U.S.C. § 1311, 1312, 1316, or 1345. "Effluent limitation" is defined as "any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance." 33 U.S.C. § 1362(11).

The Agencies do not contend that the Clean Water Rule is an action in approving or promulgating an effluent limitation, but rather that it is an "other limitation." The Act does not define "other limitation." Inasmuch as "effluent limitation" is defined as a "restriction" on discharges from point sources, the Agencies contend "other limitation" must be understood as a different kind of "restriction." They contend the Rule's clarification of the scope of "waters of the United States" protected under the Clean Water Act constitutes an "other limitation" in two respects. First, it has the effect of restricting the actions of property owners who discharge pollutants from a point source into covered waters. Second, it has the effect of imposing limitations or restrictions on regulatory bodies charged with responsibility for issuing permits

under the National Pollutant Discharge Elimination System ("NPDES") to those who discharge pollutants into covered waters.

On its face, the Agencies' argument is not compelling.  After all, the Rule's clarified definition is not self-executing.  By clarifying the definition, the Agencies did not approve or promulgate any limitation that imposes *ipso facto* any restriction or requirement on point source operators or permit issuers.  Rather, they promulgated a definitional rule that, operating in conjunction with other regulations, will result in imposition of such limitations.  Is such an indirect consequence sufficient to bring the Rule within the scope of § 1369(b)(1)(E)?

The Agencies say yes and cite several cases in support.  The seminal case supporting their construction of subsection (E) is *E.I. du Pont de Nemours Co. v. Train*, 430 U.S. 112, 136 (1977), where the Supreme Court eschewed a strict, literal reading.  The Court characterized a construction that would provide for direct circuit court review of individual actions issuing or denying permits, but disallowed such review of the "basic regulations governing those individual actions," as a "truly perverse situation."  *Id.*  Hence, even though § 1369(b)(1) provided for circuit court review only of limitations promulgated under certain enumerated sections, and the challenged regulation was promulgated under a different section—which was, however, closely related to one of the enumerated sections—the Court had "no doubt that Congress intended review of the two sets of regulations to be had in the same forum."  *Id.* at 136–37.  The Court thus construed § 1369(b)(1)(E), in light of Congress's manifest intent, to encompass review of more agency actions than a literal reading of the provision would suggest.

*E.I. du Pont* can be read in more ways than one.  As the Agencies see it, the Clean Water Rule is a "basic regulation governing those individual actions" taken by the EPA Administrator (e.g., promulgation of limitations) that *are* subject to direct circuit court review.  Accordingly, giving § 1369(b)(1) a practical construction per *E.I. du Pont*, the Agencies argue that Congress intended the lawfulness of the Clean Water Rule to be subject to direct circuit court review.

Their position finds support in several decisions of our sister circuits.  In *Nat. Res. Def. Council v. U.S. E.P.A.*, 673 F.2d 400  (D.C. Cir. 1982) (J. Ginsburg), a case closely analogous to ours, the D.C. Circuit addressed numerous consolidated challenges to EPA regulations that had

been filed in circuit courts of appeals and district courts. The regulations did not establish any numerical limitations, but prescribed permitting procedures that constituted "a limitation on point sources and permit issuers and a restriction on the untrammeled discretion of the industry." *Id.* at 405 (internal quotation marks omitted). Following *E.I. du Pont*, the court held this "limitation" was sufficient to bring the regulations within the ambit of direct circuit court review under § 1369(b)(1)(E). Employing "a practical rather than a cramped construction," the court held that direct review in the circuit court was appropriate, even though the regulations did not impose technical requirements but were "far more general and rest[ed] dominantly on policy choices." *Id.* In fact, the court cited several reasons for concluding that such "broad, policy-oriented rules" are actually more suitable for direct circuit court review than "specific technology-based rules." *Id.* at 405 n.15. The court noted that *E.I. du Pont* "does not unequivocally dictate our result but [its] reasoning strongly supports our holding that we have jurisdiction." *Id.* at 406.

In *Virginia Elec. & Power Co. v. Costle*, 566 F.2d 446 (4th Cir. 1977) ("*VEPCO*"), the Fourth Circuit addressed consolidated petitions challenging EPA regulations prescribing requirements for the location, design, construction and capacity of cooling water intake structures used to withdraw from, rather than discharge into, covered waters. The challengers argued that such requirements could not be "other limitations" under § 1369(b)(1)(E) until they were actually adopted in an individual permit proceeding. Because the requirements were not self-executing, the challengers argued they were only presumptively applicable and did not actually impose any limitation or restriction on point-source discharges. The court held the argument was foreclosed by *E.I. du Pont*. *VEPCO*, 566 F.2d at 449–50. The court held the requirement that certain information be considered in determining the best available technology for intake structures was a sufficient restriction on the discretion of point source operators and permit issuers to constitute an "other limitation" under subsection (E). *Id.* Further, citing *E.I. du Pont*, the court noted the regulations were so closely related to effluent limitations, that "it would be anomalous to have their review bifurcated between different courts." *Id.* at 450. The court held that circuit court review was proper under subsection (E), stating that "this result is consistent with the jurisdictional scheme of the Act, which in general leaves review of standards of nationwide applicability to the courts of appeals, thus furthering the aim of Congress to achieve nationally uniform standards." *VEPCO*, 566 F.2d at 451.

More recently, the Eighth Circuit followed suit. In *Iowa League of Cities v. U.S. E.P.A.*, 711 F.3d 844 (8th Cir. 2013), the court addressed two letters from the EPA sent to a senator and alleged to have effectively established new regulatory standards governing municipal water treatment processes. The court first noted that "the Supreme Court has recognized a preference for direct appellate review of agency action pursuant to the APA." *Id.* at 861 (citing *Fla. Power*, 470 U.S. at 745). The court rejected the EPA's contention that the subject letters, couched in terms of what "should not be permitted" by regulated entities, did not "promulgate" a binding limitation. Noting that the EPA had characterized the letters as expressing its position or policy, the court dismissed the notion that the instruction was not binding as "Orwellian Newspeak." *Id.* at 865. The court did not cite *E.I. du Pont*, but adopted the *VEPCO* formulation of "limitation" and went on to hold that subsection (E) applies if "entities subject to the CWA's permit requirements face new restrictions on their discretion with respect to discharges or discharge-related processes." *Id.* at 866.

These decisions from the D.C., Fourth, and Eighth Circuits demonstrate courts' willingness to view *E.I. du Pont* as license to construe Congress's purposes in § 1369(b)(1) more generously than its language would indicate.[2] However, movants herein read *E.I. du Pont* differently. They argue *E.I. du Pont*'s holding is narrower and should be limited to its facts. In support they cite decisions from the Eleventh and Ninth Circuits refusing to find circuit court jurisdiction under subsection (E).

In both *Friends of the Everglades v. U.S. E.P.A.*, 699 F.3d 1280, 1287 (11th Cir. 2012), and *Northwest Environmental Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1015–16 (9th Cir. 2008), the courts reached *results* different from those reached in the D.C., Fourth, and Eighth Circuits. However, the decisions in all five circuits are readily reconcilable. In both *Friends of the Everglades* and *Northwest Environmental*, the courts acknowledged the above discussed *NRDC* and *VEPCO* rulings, but found the regulations before them materially distinguishable from those deemed to come within the scope of § 1369(b)(1)(E). Far from *restricting* "untrammeled

---

[2]Most recently, the "functional approach" employed in these cases was applied by two district courts in relation to the Clean Water Rule in *this* litigation to find circuit court jurisdiction under subsection (E). *Murray Energy Corp. v. U.S. E.P.A.*, 2015 WL 5062506 (N.D. W.Va. Aug. 26, 2015); *State of Georgia v. McCarthy*, 2015 WL 5092568 at *2–3 (S.D. Ga. Aug. 27, 2015).

discretion," the regulations at issue in *Friends of the Everglades* and *Northwest Environmental* actually created *exemptions* from limitations. Both courts concluded that an exemption from limitation simply cannot be fairly characterized as a limitation. Neither court criticized the approach adopted in *E.I. du Pont* and applied in *NRDC* and *VEPCO*. Nor did either court reject the notion that an "other limitation" can be made out by an indirect restriction on discretion. Rather, *Friends of the Everglades* and *Northwest Environmental* held that no construction could render an exemption from limitation what it plainly is not: a "limitation" under subsection (E).[3] The two lines of authority are therefore not inconsistent.

    Here we acknowledge that the Rule is definitional only and does not *directly* impose any restriction or limitation. Yet, neither does the Rule create an exemption from limitation. By clarifying the definition of "waters of the United States," the Rule undeniably has the *indirect* effect of altering permit issuers' authority to restrict point-source operators' discharges into covered waters. The alteration invariably results in expansion of regulatory authority in some instances and imposition of additional restrictions on the activities of some property owners. These restrictions, of course, are presumably the reason for petitioners' challenges to the Rule. Hence, although the Rule is definitional in nature, it is undeniably, in the language of *E.I. du Pont*, a "basic regulation governing other individual actions issuing or denying permits." 430 U.S. at 136. To rule that Congress intended to provide direct circuit court review of such individual actions but intended to exclude from such review the definitional Rule on which the process is based, would produce, per *E.I. du Pont*, "a truly perverse situation." *Id.* To avoid just such an outcome, the *E.I. du Pont* Court reasoned that Congress must have intended that both types of regulation would be subject to review in the same forum, i.e., the circuit courts.[4]

---

[3]These authorities were cited as persuasive in *this* litigation by one district court. *North Dakota v. U.S. E.P.A.*, 2015 WL 5060744 at *2 (D. N.D. Aug. 27, 2015). However, the *North Dakota* court ignored the fact that, unlike the regulations at issue in those cases, the Clean Water Rule does not create an exemption. And despite noting the pertinence of the *NRDC-VEPCO-Iowa League* line of cases, the *North Dakota* court conspicuously ignored their holdings.

[4]*E.I. du Pont*'s analysis is also dispositive of movants' argument that review under subsection (E), by its terms, applies only to action by the EPA Administrator approving or promulgating a limitation "under section 1311, 1312, 1316, or 1345 of this title." Movants contend that all of these sections pertain to effluent limitations. Inasmuch as the Agencies do not even argue that the Clean Water Rule represents an effluent limitation, movants contend the Rule cannot be deemed to have been promulgated under any of these sections.

*E.I. du Pont* is the last word from the Supreme Court on § 1369(b)(1)(E).  It is still good law.  Our sister courts in the D.C., Fourth, and Eighth Circuits have all applied *E.I. du Pont*'s approach and have defined the scope of direct circuit court review under subsection (E) more broadly than a strict interpretation of its language would indicate.   The two circuit-level decisions, from the Ninth and Eleventh Circuits, that declined to find circuit court jurisdiction under subsection (E) did so in relation to agency action materially distinguishable from the Rule here at issue.  The movants' position is thus devoid of substantial case law support.  While their plain-language arguments are not without facial appeal, we are hardly at liberty to ignore the consistent body of case law that has sprung from that language in encounters with the real world.  In response to concern about producing a "perverse situation" seemingly at odds with congressional purpose, movants have no answer beyond their argument that Congress must be held to say what it means and mean what it says. Were we writing on a blank slate, the argument would be more persuasive, but we're not.  As an "inferior court," we are obliged to take our lead from the Supreme Court.  Having discerned no persuasive grounds to depart from the rationale that controlled in *E.I. du Pont*, I conclude that we, like our sister circuits, must follow its lead.

Viewing the Clean Water Rule through the lens created in *E.I. du Pont* reveals a regulation whose practical effect will be to *indirectly* produce various limitations on point-source operators and permit issuing authorities.  Accordingly, although the Rule does not itself impose any limitation, its effect, in the regulatory scheme established under the Clean Water Act, is such as to render the Rule, per the teaching of *E.I. du Pont* and its progeny, subject to direct circuit court review under § 1369(b)(1)(E).

## 2.  *Subsection (F) – "Issuing or Denying Permit"*

Evaluation of the second claimed basis for direct circuit court review proceeds in like manner.  Movants argue that § 1369(b)(1)(F) does not justify jurisdiction in the circuit court because the Clean Water Rule is not an action of the EPA Administrator "in issuing or denying a permit."   Yet, in relation to subsection (F), too, the Supreme Court has opened the door to

---

Yet, the Rule purports to be adopted under authority, *inter alia*, of section 311 (33 U.S.C. § 1311).  80 Fed. Reg. at 37,055.  And subsection (E) prescribes direct circuit court review of any "other limitation," in addition to any effluent limitation.  It follows that the Rule, representing an "other limitation" as defined in *E.I. du Pont* and its progeny, and adopted pursuant to § 1311, comes within the scope of circuit court review under § 1369(b)(1)(E).

constructions other than a strict literal application. In *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 196–97 (1980), the Court reversed the Ninth Circuit and held that an action of the Administrator "functionally similar" to denial of a permit is encompassed within subsection (F). If the "precise effect" of the action would be to deny a permit, the Court reasoned, it would be irrational to conclude, based on a strictly literal application of subsection (F), that the action would be subject to review in district court rather than circuit court. The Court recognized that direct review in the circuit court "would best comport with the congressional goal of ensuring prompt resolution of challenges to EPA's actions." *Id.* at 196. Addition of another level of judicial review, the Court observed, "would likely cause delays in resolving disputes under the Act." *Id.* at 197. In conclusion, the Court remarked: "Absent a far clearer expression of congressional intent, we are unwilling to read the Act as creating such a seemingly irrational bifurcated review system." *Id.*

Here, similarly, the Agencies contend that the effect of the Clean Water Rule, operating in the extant regulatory scheme, is to impact permitting requirements, thereby affecting the granting and denying of permits. This is enough, the Agencies argue, to bring the Clean Water Rule within the ambit of subsection (F), because it too impacts permitting requirements. In support they cite a Sixth Circuit case, *Nat'l Cotton Council v. U.S. E.P.A.*, 553 F.3d 927, 933 (6th Cir. 2009), *cert. denied sub nom. Crop Life v. Baykeeper*, 130 S.Ct. 1505 (2010), and *Am. Farm Bureau Fed'n v. Baykeeper*, 130 S.Ct. 1505 (2010). In *National Cotton*, this court held that subsection (F) authorizes direct circuit court review not only of actions issuing or denying particular permits, but also of regulations governing the issuance of permits. The court relied on authorities from the Ninth Circuit and D.C. Circuit stemming from *E.I. du Pont* and *Crown Simpson*. *See Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292, 1296–97 (9th Cir. 1992); *Am. Mining Cong. v. U.S. E.P.A.*, 965 F.2d 759, 763 (9th Cir. 1992); *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 656 F.2d 768, 775 (D.C. Cir. 1981). In fact, the *National Cotton* court noted that this more expansive reading of subsection (F) encompassed even regulations that *exempted* certain discharges from permitting requirements. *Nat'l Cotton*, 553 F.3d at 933. That

is, under subsection (F), a regulation that imposes no restriction or limitation is reviewable in circuit court, so long as it affects permitting requirements.[5]

Movants maintain that a mere impact on permitting requirements is not enough to bring the Rule within subsection (F). They contend the holding of *Crown Simpson*'s expansion of the plain language of the provision is really quite narrow and that *National Cotton*'s reading of subsection (F) is overly broad and even inconsistent with *Crown Simpson*. They contend the "precise effect" of the Clean Water Rule is *not* to deny any permit and that it is therefore not "functionally similar."

Movants attack *National Cotton* on several fronts. First, they contend the decision is not entitled to precedential weight because its determination of jurisdiction was summary in nature and devoid of substantive analysis. In support they cite *Emswiler v. CSX Transportation, Inc.*, 691 F.3d 782, 788–90 (6th Cir. 2012), for the proposition that "drive-by jurisdictional rulings" based on "less than meticulous" reasoning should be accorded no precedential effect. *Emswiler* is inapposite. The *Emswiler* court used these characterizations in relation to an opinion's careless characterization of a party's failure to meet a threshold exhaustion requirement as depriving the court of subject matter jurisdiction. While the failure to exhaust impacted the plaintiff's ability to win relief on the merits, the *Emswiler* court called it "less than meticulous" to say the failure to exhaust deprived the court of subject matter jurisdiction. *Id.* at 789. The *National Cotton* jurisdictional ruling was not the product of carelessness. It is succinct because it efficiently follows the holdings of several other rulings—one by the Supreme Court—whose reasoning it implicitly incorporated by citing them.

Granted, the Eleventh Circuit expressly declined to follow *National Cotton* in *Friends of the Everglades*, 699 F.3d at 1288, rejecting the position that *Crown Simpson* legitimized direct circuit court review of any "regulations relating to permitting itself." The court noted that, although the Sixth Circuit adopted that interpretation in *National Cotton*, it did so in reliance on two Ninth Circuit cases that had since been distinguished by the Ninth Circuit in *Northwest Environmental*, 537 F.3d at 1016–18. In *Northwest Environmental*, 537 F.3d at 1018, as in

---

[5] *National Cotton* was followed in *this* litigation in *Murray Energy*, 2015 WL 5062506 at *5–6, the court noting there was no dispute that the Clean Water Rule will have an impact on permitting requirements.

*Friends of the Everglades*, 699 F.3d at 1288, the court ruled that a regulation creating a permanent exemption from the permitting process could not have the effect of granting or denying a permit reviewable under § 1369(b)(1)(F) precisely because the regulation *excluded* certain discharges from the permitting process altogether.

Yet, even if it be conceded that *National Cotton* said too much when it noted in *dicta* that the Ninth Circuit had construed subsection (F) broadly enough to include an exemption from regulation, the fact remains that the action here under review is not an exemption. Rather, both petitioners and the Agencies operate on the understanding that the effect of the Clean Water Rule is not solely to exclude waters from protection, but to extend protection to some additional waters. This extension indisputably expands regulatory authority and impacts the granting and denying of permits in fundamental ways. The later clarification of Ninth Circuit law noted in *Friends of the Everglades* does not, therefore, in any way undermine the authority of *National Cotton* as applied to the Clean Water Rule.

Finally, movants contend *National Cotton* is wrongly decided. They contend that *Crown Simpson*'s expanded construction of subsection (F) was narrow and circumscribed; whereas *National Cotton*'s holding that subsection (F) authorizes circuit court review of "regulations governing the issuance of permits" is unduly broad. Perhaps. Yet, if we believed *National Cotton* was not distinguishable and was wrongly decided, we would still not be free to reject its holding. Generally, in a multi-circuit case where a question of federal law is at issue, the transferee court is obliged to follow its own interpretation of the relevant law. *See Murphy v. FDIC*, 208 F.3d 959, 964–65 (11th Cir. 2000) (citing *In re Korean Airlines Disaster*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987), and observing that other circuits have uniformly agreed with the D.C. Circuit). Moreover, no other court has held that *National Cotton* was wrongly decided. *National Cotton*, as well as the Ninth Circuit and D.C. Circuit authorities on which it relied, are still good law. Movants have not identified any materially contrary authority.

Furthermore, *National Cotton*'s construction is consistent with congressional purpose, which appears to have been the guiding light in both *E.I. du Pont* and *Crown Simpson*. In *Florida Power*, 470 U.S. at 744–45, in relation to the Atomic Energy Act, the Court recognized that "one crucial purpose" of statutes providing for direct circuit court review of agency action is

judicial economy.  *Id.* at 744.  The Court noted that the district court's superior factfinding capacity is typically unnecessary to judicial review of agency action.  On the other hand, providing for initial review in the district court has the negative effect of "requiring duplication of the identical task in the district court and in the court of appeals; both courts are to decide, on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review."  *Id.*  The Court acknowledged that the intent of Congress, not the Court's concept of sound policy, is ultimately determinative, but concluded:

> Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals.

*Id.* at 746.  *See also Tennessee v. Herrington*, 806 F.2d 642, 650 (6th Cir. 1986) (following *Florida Power* and noting that where Congress has provided for direct circuit court review but its intent is ambiguous in a specific case, policy considerations are relevant); *Natural Resources Def. Council v. Abraham*, 355 F.3d 179, 193 (2d Cir. 2004) (citing cases from Second, Seventh, Tenth and D.C. Circuits for the proposition that "when there *is* a specific statutory grant of jurisdiction to the court of appeals, it should be construed in favor of review by the court of appeals.").

　　*National Cotton*'s broader reading of subsection (F) is thus consistent with the preference in favor of circuit court review recognized in *Florida Power* and implicitly at work in both *E.I. du Pont*, *see* 430 U.S. at 128 (characterizing it as "almost inconceivable that Congress would have required duplicate review in the first instance by different courts"), and *Crown Simpson*, *see* 445 U.S. at 196–97 (noting unwillingness to conclude Congress intended to cause delays that would result from duplicative review process).

　　In *Florida Power*, the Court overruled Justice Stevens' objection that proper deference to Congress required enforcement of "the plain and simple construction of the statutory language." *Id.* at 750.  Justice Stevens' plain-language position, like that of movants in this case, is not devoid of logic.  Yet, as Justice Stevens protested, the Court rejected it as a matter of mere "semantic quibbles."  *Id.*  We do not view movants' plain-language arguments as semantic quibbles, but, in my view, they have clearly failed to identify any *substantial* reason to conclude

Case 3:15-cv-03751-MED Document #36 Filed 03/09/2601 Page 110 of 128    (30 of 48)

Nos. 15-3751, et al.    *In re: U.S. Dep't of Defense & U.S. Envtl. Protection Agency Final*    Page 16
                        *Rule: Clean Water Rule*

the preference favoring direct circuit court review—created by Congress in § 1369(b)(1) and honored by the Supreme Court—does not, in this case, ultimately serve all parties' interests in efficiency, judicial economy, clarity, uniformity and finality.

*Florida Power*, like *E.I. du Pont* and *Crown Simpson*, demonstrates a strong preference for construing Congress's provision for direct circuit court review of agency action by a practical, functional rather than a technical approach.   A holding that we have jurisdiction to hear the instant petitions for review of the Clean Water Rule is consistent with this understanding.   On the other hand, a contrary ruling, though facially consonant with the plain language of § 1369(b)(1), finds practically no solid support in the case law.   Accordingly, I conclude that we have jurisdiction under subsection (F) as well.

### C.  Miscellaneous Objections

Movants present arguments based on other statutory provisions, items of legislative history and canons of construction.   The arguments are not persuasive.   That the Clean Water Rule was promulgated jointly by the EPA Administrator *and* the Secretary of the Army does not defeat the fact that it represents action, in substantial part, of the Administrator.   The items of legislative history identified by the parties and said to be probative of congressional intent are sparse and frankly shed little light on the specific jurisdictional questions before the court.   *See E.I. du Pont*, 430 U.S. at 133 (dismissing arguments based on other provisions of the statute and legislative history as inconclusive and not deserving of detailed discussion).   Similarly, the various canons of construction alluded to by the parties are inconclusive and carry little weight in comparison with the dispositive considerations, as defined in the foregoing discussion of the guiding case law.

Movants also raise what they characterize as "due process concerns."   They contend that if circuit court jurisdiction is exercised under § 1369(b)(1), then any other challenges to the Clean Water Rule not made within 120 days after its promulgation are foreclosed unless based on grounds which arose after the 120th day, per § 1369(b)(2).   If subsequent as-applied challenges are thus deemed precluded, then unwary point-source operators and landowners uncertain about the scope of the Clean Water Act's regulatory reach may be subject to

enforcement actions and penalties without fair notice of the conduct prohibited. In *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992), the Ninth Circuit referred to this preclusive effect as a "peculiar sting."

The concern is speculative and overblown in this case. If the court exercises jurisdiction over petitioners' instant challenges to the validity of the Rule in this nationwide multi-circuit case and upholds the Rule, then that determination *should* have preclusive effect. *See Narragansett Elec. Co. v. U.S. E.P.A.*, 407 F.3d 1, 5 (1st Cir. 2005) (noting that "the short time frame in § 1369(b) clearly reflects some effort to protect the EPA's interests in finality in certain matters, particularly certain rulemakings with substantial significance and scope."). On the other hand, this court's exercise of jurisdiction and ruling on a challenge to the *validity* of the Rule would not preclude challenge to subsequent *application* of the Rule in a particular permitting requirement or enforcement action. *See Decker v. Nw. Envtl. Def. Ctr.*, 133 S.Ct. 1326, 1335 (2013) (noting that whereas a challenge to the validity of regulations would be subject to the exclusive jurisdictional bar of § 1369(b)(2), an enforcement action would not be). To the extent our eventual ruling on the validity of the Rule might conceivably be asserted in overbroad fashion as barring a defense against application of the Rule in an enforcement action, the asserted bar would be subject to testing as excessive and unfairly prejudicial in that action. *See Nat. Res. Def. Council v. U.S. E.P.A.*, 673 F.3d 400, 407 (D.C. Cir. 1982) (rejecting the same "due process" argument and suggesting that overbroad application of the § 1369(b)(2) bar could be challenged, when ripe, as unconstitutional). We therefore reject movants' "due process concerns" as premature and unfounded.

### III. CONCLUSION

Both sides have presented worthy arguments in support of their respective positions on jurisdiction. Since enactment of the Clean Water Act in 1972, the jurisdictional provisions of § 1369(b)(1)(E) and (F) have been subjected to judicial scrutiny in relation to various regulatory actions and have been consistently construed not in a strict literal sense, but in a manner designed to further Congress's evident purposes. Pursuant to the uniform trend of the instructive case law, the scope of direct circuit court review has gradually expanded. In response, Congress has not moved to amend the provision or otherwise taken "corrective" action. As explained

above, the instant petitions for review of the Clean Water Rule come within the scope of subsections (E) and (F), as they have come to be defined in the governing case law. Movants have failed to identify any particular circumstances or practical considerations that would justify holding that adjudication of the instant petitions for judicial review in the various district courts would better serve Congress's purposes. Instead, recognition of our authority and our duty to directly review the Clean Water Rule in this multi-circuit case is in all respects consonant with the governing case law and in furtherance of Congress's purposes. Conversely, to rule that we lack jurisdiction would be to contravene prevailing case law and frustrate congressional purposes without substantial justification.

We hold that jurisdiction is properly laid in this court. All pending motions to dismiss are **DENIED**.

---

## CONCURRING IN THE JUDGMENT

---

GRIFFIN, Circuit Judge, concurring in the judgment, only.

I concur in the judgment holding that we possess subject-matter jurisdiction in this case; thus, I join in denying petitioners' motions to dismiss. However, I do so only because I am required to follow our precedentially-binding decision, *National Cotton Council of America v. U.S. E.P.A.*, 553 F.3d 927 (6th Cir. 2009). Were it not for *National Cotton*, I would grant the motions to dismiss.

### I.

Congress establishes the jurisdiction of the courts of appeals and other inferior courts. *See, e.g., Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). In determining whether the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, creates jurisdiction in our court over a case or controversy, we must examine and apply the terms of the statute enacted by Congress. As with all matters of statutory construction, we should apply a textualist, not a "functional" or "formalistic," approach.[1]

In this regard, "[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States,* 242 U.S. 470, 485 (1917). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Id.* at 490. Recognizing the consequences of unbridled judicial forays into the legislative sphere, the Supreme Court has admonished "'time and again that courts must presume that a legislature says

---

[1]With a heavy heart, I acknowledge the sudden passing of Justice Antonin Scalia. Justice Scalia was the founder and champion of the modern textualist mode of constitutional and statutory construction. His essay, A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW (1997), and other writings and opinions profoundly influenced a generation of attorneys, legal scholars, and judges. Justice Scalia's legacy will live on for decades in countless opinions such as this one.

in a statute what it means and means in a statute what it says there.'" *Arlington Cent. Sch. Dist. Bd. of Ed. v. Murphy,* 548 U.S. 291, 296 (2006) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). Accordingly, "[w]hen the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (internal citations and quotation marks omitted).

Whether it is desirable for us to possess jurisdiction for purposes of the efficient functioning of the judiciary, or for public policy purposes, is not the issue. Rather, the question is whether Congress in fact created jurisdiction in the courts of appeals for this case. I conclude that it did not.

The Environmental Protection Agency and the U.S. Army Corps of Engineers ("the Agencies") argue that both 33 U.S.C. § 1369(b)(1)(E) and (F) vest this court with jurisdiction regarding petitioners' claims. In my view, it is illogical and unreasonable to read the text of either subsection (E) or (F) as creating jurisdiction in the courts of appeals for these issues. Nonetheless, because *National Cotton* held otherwise with respect to subsection (F), I concur in the judgment, only.

## II.

Subsection (E) creates jurisdiction to review an action "approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title[.]" Sections 1311 and 1312 specifically set forth effluent limitations and water quality related-effluent limitations. Sections 1316 and 1345 provide additional limitations on discharges and sewage sludge to achieve state water quality standards when those in sections 1311 and 1312 fall short. The Act defines "effluent limitation" as expressly relating to *discharges*:

> The term "effluent limitation" means any restriction established by a State or the Administrator on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are *discharged* from point sources into navigable waters, the waters of the contiguous zone, or the ocean, including schedules of compliance.

§ 1362(11) (emphasis added). It does not define "other limitation."

Petitioners ask that we draw an associational link between effluent and other limitations, directing this court to a Fourth Circuit case that speaks in terms of an "other limitation" being "closely related" to "effluent limitations," *Va. Elect. & Power Co. v. Costle*, 566 F.2d 446, 450 (4th Cir. 1977) ("*VEPCO*"), and to a Seventh Circuit case holding that "other limitation" is "restricted to limitations directly related to effluent limitations." *Am. Paper Inst., Inc. v. U.S. E.P.A.*, 890 F.2d 869, 877 (7th Cir. 1989). On the other hand, the Agencies advocate for—and the lead opinion applies—a broad reading of "other limitation"; that is, "other limitation" includes "restrictions that are *not* effluent limitations."

In my view, both are wrong. Whatever the relationship may be between effluent and other limitations, the plain text of subsection (E) clearly delineates what the limitations are, and what they are not: the "limitations" set forth in §§ 1311, 1312, 1316, and 1345 provide the boundaries for what constitutes an effluent or other limitation. The statutory interpretation canon, *noscitur a sociis*, drives this point home. Simply, "a word is known by the company it keeps" to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) (citation omitted). Application of this canon is simple: "any effluent limitation or other limitation" must be related to the statutory boundaries set forth in §§ 1311, 1312, 1316, and 1345.

The problem with the boundaries for the Agencies is that the definitional section the Clean Water Rule modifies—"[t]he term 'navigable waters' means the waters of the United States, including the territorial seas"—does not emanate from these sections. It is a phrase used in the Act's definitional section, § 1362, and no more. But the definitional section is not mentioned in § 1369, let alone the specific sections listed in subsection (E). And the definitional section, as the lead opinion acknowledges, is not self-executing; at best, it operates in conjunction with other sections scattered throughout the Act to define when its restrictions even apply. Accordingly, the lack of any reference to § 1362 in subsection (E) counsels heavily against a finding of jurisdiction. *See Friends of Earth v. U.S. E.P.A.*, 333 F.3d 184, 189 (D.C. Cir. 2003) ("[T]he courts of appeals have consistently held that the express listing of specific EPA actions in section 1369(b)(1) precludes direct appellate review of those actions not so

specified."); *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992) ("It would be an odd use of language to say 'any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title' in § 1369(b)(1)(E) if the references to particular sections were not meant to exclude others.").

The Agencies' response to this textual point is underwhelming, raising suppositional and policy arguments. First, the Agencies contend that they promulgated the Clean Water Rule *only* under the *effluent limitations* provision codified at § 1311. Section 1311 makes the unauthorized "discharge of any pollutant by any person . . . unlawful." § 1311(a). The phrase "discharge of any pollutant" is defined, as pertinent here, as "any addition of any pollutant to navigable waters from any point source." § 1362(12)(A). The Agencies concede that "[t]he plain text reading of the phrase 'other limitation under sections 1311, 1312, 1316, or 1345' . . . *can only refer to limitations that are promulgated under the specified sections but are not effluent limitations*." (Emphasis added.) They then suppose in circular fashion that "[b]y defining what waters are 'waters of the United States,' the Clean Water Rule establishes where the Act's prohibitions and requirements apply."

This may be true, but it fails muster on the point of whether the Clean Water Rule is any "other limitation" within the meaning of § 1311. Importantly, neither the Agencies nor the lead opinion have identified a specified subsection within § 1311 that are "not effluent limitations" under which the Agencies promulgated the Clean Water Rule. This is because they cannot. Waters of the United States applies across the Act, not just to those discharge limitations set forth in § 1311. The Clean Water Rule is not a "limitation" on the discharge of pollutants *into* waters of the United States; rather, it sets the jurisdictional reach for whether the discharge limitations even apply in the first place. In the Agencies' own words:

> The action imposes no enforceable duty on any state, local, or tribal governments, or the private sector, and does not contain regulatory requirements that might significantly or uniquely affect small governments.

Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054, 37,102 (June 29, 2015) (to be codified at 33 C.F.R. pt. 328 and 40 C.F.R. pts. 110, 112, 116, 117, 122, 230, 232, 300, 302, and 401). In short, I refuse to read § 1369's narrow jurisdictional

authorization in such a circular fashion, expansively turning the broadening of the Act's jurisdiction into a limitation that may be imposed *only when jurisdiction is appropriate. Cf. North Dakota v. U.S. E.P.A.*, --- F. Supp. 3d ---, 2015 WL 5060744, at \*2 (D.N.D. Aug. 27, 2015) ("[T]he States have exactly the same discretion to dispose of pollutants into the waters of the United States after the Rule as before.").

Second, the Agencies raise policy considerations as to why review of such a nationally important rule should originate in the courts of appeals. They argue, for example, that the definition of waters of the United States is a "fundamental" and "basic regulation" pertinent to the Act's backbone—its prohibition against discharging pollutants into such waters without a permit. The Agencies also argue initial review in the district courts will inevitably lead to waste of judicial and party resources, delays, and possibly even different results.

However, no matter how important a policy prerogative may be, the Act's plain and unambiguous text binds this court. That text stands in marked contrast to the Clean Air Act's express authorization to challenge "any other nationally applicable regulations" by the EPA in the D.C. Circuit. *See* 42 U.S.C. § 7607(b)(1); *Am. Paper Inst.*, 890 F.2d at 877 ("Congress could easily have provided jurisdiction . . . by providing a general jurisdiction provision in the Act. Instead, Congress specified those EPA activities that were directly reviewable by the court of appeals.") (internal citation omitted). And that text makes clear that this court does not have jurisdiction to hear a challenge to a regulation that does not impose any limitation as set forth by the Act.

The lead opinion departs from the Act's plain text by relying on a string of cases it contends encourages a function-over-form approach to subsection (E). *E.I. du Pont de Nemours & Co. v. Train*, 430 U.S. 112 (1977), we are told, broadly interprets the Act's jurisdictional authorization to prevent the "truly perverse situation" where the courts of appeals review actions issuing or denying permits, but not the "basic regulations governing those individual actions." I agree that *E.I. du Pont* speaks to such policy considerations, but disagree that such policy considerations drove the Court's analysis.

In *E.I. du Pont*, the Supreme Court considered effluent limitation regulations promulgated by the EPA for discharges by the inorganic chemical industry. *Id.* at 122–24. The primary issue was whether the Act granted the EPA the power to set effluent limitations by regulation (thereby falling within subsection (E)) or by guideline (thereby falling outside subsection (E)). *Id.* at 124–25. "Thus the issue of jurisdiction to review the regulations [was] intertwined with the issue of [the] EPA's power to issue the regulations." *Id.* at 125. After resolving the "critical question [of] whether [the] EPA has the power to issue effluent limitations by regulation" in the EPA's favor based on the statute's text and legislative history, *id.* at 124, 126–36, the Court plainly noted that its holding that the Act "authorize[d] the [EPA] to promulgate effluent limitations [by regulation] for classes and categories of existing point sources *necessarily resolve[d] the jurisdictional issue* as well." *Id.* at 136 (emphasis added).

Yet, the lead opinion draws its "functional" "lens" from *E.I. du Pont*'s subsequent discussion as to why it rejected the industry's argument that subsection (E)'s reference to § 1311 (the effluent limitations provision) "was intended only to provide for review of the grant or denial of an individual variance" from the Act's effluent limitations restriction. *Id.* Among other reasons, the Court found this argument unpersuasive because the industry's "construction would produce the truly perverse situation in which the court of appeals would review numerous individual actions issuing or denying permits . . . but would have no power of direct review of the basic regulations governing those individual actions." *Id.* This policy reason came *after* a plain textual rejection of the industry's position. *Id.* It is, therefore, a far stretch to take this dicta and expand it as the lead opinion does to find jurisdiction proper when a regulation's "practical effect" only sets forth "indirect" limits. And, unlike in *E.I du Pont*, the Agencies here admit they have not promulgated an effluent limitation. I therefore decline to read *E.I. du Pont*, as the lead opinion does, as shoehorning an exercise in jurisdictional line-drawing into subsection (E)'s "other limitation" provision.

To the extent policy considerations are responsible for *E.I. du Pont*'s outcome, I disagree that, to borrow the lead opinion's phrase, such "real world" considerations mandate a watered-down version of textualism in this case, erroneously elevating the perceived congressional purpose over the statutory language. As the Supreme Court emphasized just last year, "[o]ur job

is to follow the text even if doing so will supposedly 'undercut a basic objective of the statute.'"
*Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015) (citation omitted).   Thus,
when presented with "the clear meaning of the text, there is no need to . . . consult the [statute's]
purpose. . . . [I]t is ultimately the provisions of our laws rather than the principal concerns of our
legislators by which we are governed."  *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157,
167–68 (2004) (citation omitted and second alteration in original).  Put differently, unambiguous
text trumps policy considerations.  *See Kloeckner v. Solis*, 133 S. Ct. 596, 607 n.4 (2012)
("[E]ven the most formidable argument concerning the statute's purposes could not overcome
the clarity we find in the statute's text."); *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1710
(2012) ("[N]o legislation pursues its purposes at all costs, and petitioners' purposive argument
simply cannot overcome the force of the plain text.") (internal citation omitted); *Mertens v.
Hewitt Assocs.*, 508 U.S. 248, 261 (1993) ("[V]ague notions of a statute's 'basic purpose' are
nonetheless inadequate to overcome the words of its text regarding the *specific* issue under
consideration.").  As set forth, subsection (E)'s language could not be clearer, thus removing
policy considerations from this court's analytical quiver.

Circuit case law drawing on this "functional approach" similarly misses the mark.
Notably, *VEPCO* appears to define "limitation" as "a restriction on the untrammeled discretion
of the industry which was the condition prior to the [Act's] passage."  566 F.2d at 450.  Other
cases relied upon by the lead opinion have followed this analysis.  *See, e.g., Iowa League of
Cities v. U.S. E.P.A.*, 711 F.3d 844, 866 (8th Cir. 2013); *Nat. Res. Def. Council, Inc. v. U.S.
E.P.A.*, 673 F.2d 400, 405 (D.C. Cir. 1982) ("*NRDC II*").   However, *VEPCO*'s statement
requires context.

The regulation at issue in *VEPCO* governed the "structures used to withdraw water for
cooling purposes."  566 F.2d at 446–51.  It did "not impose specific structural or locational
requirements upon cooling water intake structures," and instead just "require[d] that the location,
design, construction, and capacity of cooling water intake structures reflect the best technology
available for minimizing adverse environmental impact."  *Id.* at 450.  Because the regulation
mandated the consideration of certain information in constructing intake structures, the Fourth
Circuit reasoned, that "in itself [was] a limitation on point sources and permit issuers" and

therefore restricted "the untrammeled discretion of the industry." *VEPCO* also drew from *E.I. du Pont*, reasoning that the regulation issued there was "so closely related to the effluent limitations and new source standards of performance . . . that . . . it would be anomalous to have their review bifurcated between different courts." *Id.* (*citing E.I. du Pont*, 430 U.S. at 136).

At most, *VEPCO* is an example of what constitutes an "other limitation"—a restriction on the industry's abilities to intrude upon the waters of the United States without the Agencies' permission to do so. In this regard, the Fourth Circuit's "untrammeled discretion" language makes absolute sense, but I disagree with the lead opinion's reliance upon this language here. The *Act* in and of itself restricts the industry's untrammeled discretion. I see no textual indication that Congress intended *any* restriction on the industry to be directly reviewed by the courts of appeals, yet under the lead opinion's reading, *any* industry restriction requires review here. The lead opinion's application thus swallows the rule.

Finally, that the Clean Water Rule arguably expands the Act's jurisdiction cannot be a reason to find a functional limitation under subsection (E). The lead opinion hangs its "functional" premise on the fact that the Clean Water Rule is a "basic regulation" affecting the Act's core, defining where it applies and where it does not. It presumes, perhaps rightly so, that the Clean Water Rule "results in [an] expansion of regulatory authority in some instances and impos[es] . . . additional restrictions on the activities of some property owners." However, I cannot agree that the latter supports the former in concluding that the Clean Water Rule "has the *indirect* effect of altering permit issuers' authority to restrict point-source operators' discharges into covered waters." A plausible hypothetical removes the linchpin in this analysis. Suppose instead of taking a flow-like approach to the Act's jurisdiction, the Agencies—perhaps under a different administration—promulgate a rule that ebbs toward a more restricted view, consistent with the plurality opinion in *Rapanos v. United States*, 547 U.S. 715 (2006). Under the lead opinion's analysis, a rule *narrowing* the scope of the waters of the United States would *also* be an "other limitation" sufficient to trigger our jurisdiction because it too would indirectly affect point-source operators and permit issuing authorities, albeit in a less restrictive manner. Congress could not have intended such a nonsensical result.

For these reasons, I cannot conclude that subsection (E) authorizes our jurisdiction.

III.

Second, the lead opinion concludes we have jurisdiction to hear petitioners' challenges under subsection (F). I agree, but for different reasons. Specifically, while I agree that *National Cotton* controls this court's conclusion, I disagree that it was correctly decided. But for *National Cotton*, I would find jurisdiction lacking. I therefore concur in the judgment, only.

Section 1369(b)(1)(F) provides exclusive jurisdiction in this court to review an action "issuing or denying any permit under section 1342, [the National Pollutant Discharge Elimination System ("NPDES")]." On its face, subsection (F) clearly does not apply to the Clean Water Rule's promulgation. *See Rhode Island v. U.S. E.P.A.*, 378 F.3d 19, 23 (1st Cir. 2004) ("By its plain terms, [subsection (F)] conditions the availability of judicial review on the issuance or denial of a permit."). Under a plain text reading, the Clean Water Rule neither issues nor denies a permit under the NPDES. In my view, this should end the analysis. I am, however, constrained by our court's precedent holding that "issuing or denying any permit" means more than just that.

As the lead opinion correctly notes, several courts have deviated from a strict reading of the jurisdictional language and toward a more "functional" approach. In *Crown Simpson Pulp Company v. Costle*, for example, the Supreme Court blessed jurisdiction in the courts of appeals when the EPA's action—there, vetoing California's proposal to grant permits for pulp mills to discharge pollutants into the Pacific Ocean—had the "precise effect" of denying a permit. 445 U.S. 193, 196 (1980). In other words, jurisdiction was proper because the EPA's action was "functionally similar to its denial of a permit in States which do not administer an approved permit-issuing program." *Id.* A contrary ruling, held the Supreme Court, would lead to an "irrational bifurcated system" depending upon "the fortuitous circumstance of whether the State in which the case arose was or was not authorized to issue permits." *Id.* at 196–97. Both the D.C. Circuit, *Nat. Res. Def. Council, Inc. v. U.S. E.P.A*, 656 F.2d 768, 776 (D.C. Cir. 1981) ("*NRDC I*"); *NRDC II*, 673 F.2d at 405 (then-Judge Ginsburg's "practical rather than a cramped construction" counsel), and the Ninth Circuit, *Am. Mining Congress v. U.S. E.P.A.*, 965 F.2d 759 (9th Cir. 1992), *Nat. Res. Def. Council, Inc., v. U.S. E.P.A.*, 966 F.2d 1292, 1297 (9th Cir. 1992)

("*NRDC III*"), *Nat. Res. Def. Council v. U.S. E.P.A.*, 526 F.3d 591, 601 (9th Cir. 2008) ("*NRDC IV*"), have similarly adopted a functional approach to jurisdiction under subsection (F).

I depart ways with the lead opinion at the breadth with which it reads *Crown Simpson*. As the Ninth Circuit made clear in *Northwest Environmental Advocates v. U.S. E.P.A.*, "[t]he facts of [*Crown Simpson*] make clear that the Court understood functional similarity in a narrow sense." 537 F.3d 1006, 1016 (9th Cir. 2008). The Supreme Court was clearly concerned with a rigid construction of "issuing or denying" given the factual circumstances of *Crown Simpson*— *i.e.*, had the EPA not delegated California the authority to designate NPDES permits, it would have had the power to grant or deny permits directly (thus explaining the "perverse" result rationale). With this factual overlay, the Court's "precise effect" exception makes sense.

That exception simply does not apply here. We have underscored that the text matters when interpreting the jurisdictional grant of § 1369(b)(1). *See Lake Cumberland Trust, Inc. v. U.S. E.P.A.*, 954 F.2d 1218, 1221–24 (6th Cir. 1992) (noting the textual distinctions between subsections (E) and (G) to find no jurisdiction). It is also not lost on me that *National Cotton* itself purported to accentuate § 1369(b)(1)'s narrowness. 553 F.3d at 933 ("Congress did not intend court of appeals jurisdiction over all EPA actions taken pursuant to the Act."). It stretches the plain text of subsection (F) to its breaking point to hold that a definition setting the Act's boundaries has, under *Crown Simpson*, the "precise effect" of or is "functionally similar" to, approving or denying a NPDES permit. At best, the Clean Water Rule is one step removed from the permitting process. It informs whether the Act requires a permit in the first place, not whether the Agencies can (or will) issue or deny a permit.

Two other points buttress my problem with jurisdiction here. First, the Clean Water Rule applies across the entire Act, and not just with respect to the NPDES permitting process. This is particularly true when considering the fact that the Clean Water Rule's expansive definition also applies to the provision of the Act—§ 1344—requiring the Corps to issue permits for dredged or fill material. Section 1344, however, is not mentioned in subsection (F), only § 1342 is. Second, the Agencies' own argument as to why they contend the Clean Water Rule constitutes "issuing or denying any permit" shows why there are problems with extending jurisdiction to cover the Clean Water Rule. By suggesting that the Clean Water Rule identifies what waters will and will

not require permitting under NPDES, they have therefore identified situations—*i.e.*, not waters of the United States—where there would never be permit decisions in the first place to be reviewed by the courts of appeals.  *See Nw. Envtl. Advocates*, 537 F.3d at 1018; *Friends of the Everglades*, 699 F.3d at 1288.

Although not bound by *Crown Simpson* and the other cases cited by the lead opinion, *National Cotton* dictates my conclusion.  There, we extended jurisdiction under subsection (F) when a rule "regulates the permitting procedures." 553 F.3d at 933.  At issue in *National Cotton* was an EPA rule exempting certain pesticides from the NPDES permitting requirements.  *Id.* at 929.  In expanding subsection (F)'s jurisdictional authorization, our court relied upon statements by the Ninth Circuit in *American Mining Congress* and *NRDC III* extending jurisdictional review from the "issuance or denial of a particular permit" to "the regulations governing the issuance of permits" and the "rules that regulate the underlying permit procedures."  *Id.* at 933 (citations omitted).

*National Cotton*'s jurisdictional reach, in my view, has no end.  Indeed, the lead opinion even acknowledges that *National Cotton* holds "a regulation that imposes no restriction or limitation is reviewable in circuit court, so long as it affects permitting requirements."  It is a broad authorization to the courts of appeals to review *anything* relating to permitting notwithstanding the statutory language to the contrary.

Moreover, the Ninth Circuit has subsequently rolled back the two cases relied upon by *National Cotton* to broadly interpret subsection (F), *American Mining Congress* and *NRDC III*. *See Nw. Envtl. Advocates*, 537 F.3d at 1018.  It also drew a line between statutory exemptions and permitting procedures, noting that a regulation granting a statutory exemption necessarily meant that the courts of appeals would "never have to consider on direct review an action involving the denial of an NPDES permit for pollutant discharges" and thus there was no danger of the "awkward[]" and bifurcated review problem described in *NRDC I*.  *Id.* at 1018 (citation omitted).  The Eleventh Circuit, sitting *en banc*, has also taken this tack.  *See Friends of the Everglades*, 699 F.3d at 1288.  It also directly criticized *National Cotton* for expanding subsection (F) to apply to any "regulations relating to permitting itself."  *Id.*

The lead opinion distinguishes *Northwest Environmental Advocates* and *Friends of the Everglades*, noting that those cases addressed permitting *exemptions*. But so too did *National Cotton*. In my view, the Ninth and Eleventh Circuit's commentary regarding *National Cotton* and its undergirdings have merit, especially considering subsection (F)'s plain text and the factually narrow circumstances of *Crown Simpson* and *E.I. du Pont*. These same reasons lead me to conclude the lead opinion's reliance on a non-Clean Water Act case to support its policy arguments, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985), is unavailing.

Taking *National Cotton*'s holding, as I must, there is a better way to reconcile these authorities: Permitting decisions under NPDES and exempting a certain action from the NPDES permitting process are functionally the same because both allow persons to discharge pollutants into the waters of the United States. Such actions, therefore, are reviewable under subsection (F). That is not what we have here. The Clean Water Rule presents neither a permitting exemption (*National Cotton*) nor similar functional equivalency (*Crown Simpson*) that any court has approved to find jurisdiction proper under subsection (F).

However, *National Cotton* goes further than just finding jurisdiction in cases involving permitting exemptions, and expands jurisdiction to review any regulation "governing" permits. 553 F.3d at 933. Although, in my view, the holding in *National Cotton* is incorrect, this panel is without authority to overrule it. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1095 (6th Cir. 2010) ("It is a well-established rule in this Circuit that a panel of this court may not overrule a prior published opinion of our court absent en banc review or an intervening and binding change in the state of the law.").[2] Here, the Clean Water Rule defines what waters necessarily require permits, and therefore is undoubtedly a "regulation[] governing the issuance of permits under section 402 [33 U.S.C. § 1342]." *National Cotton*, 553 F.3d at 933. Under this binding authority, the lead opinion properly concludes jurisdiction rests before us under subsection (F).

For these reasons, I concur in the judgment, only.

_____

[2] That this action is before us upon consolidation by the Judicial Panel on Multidistrict Litigation does not change this result, for we are to apply our law absent an indication that it is "unique" and "arguably divergent from the predominant interpretation of . . . federal law." *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 911 n.17 (6th Cir. 2003). Although I disagree with *National Cotton*, I cannot conclude that it is unique and diverges from the predominant view of the other circuits.

IV.

In sum, I am compelled to find jurisdiction is proper pursuant to *National Cotton*.  Absent *National Cotton*, I would dismiss the petitions for lack of jurisdiction.

---

## DISSENT

---

KEITH, Circuit Judge, dissenting.  I agree with Judge Griffin's reasoning and conclusion that, under the plain meaning of the statute, neither subsection (E) nor subsection (F) of 33 U.S.C § 1369(b)(1) confers original jurisdiction on the appellate courts.  Like Judge Griffin, I disagree with Judge McKeague.  Nevertheless, Judge Griffin concludes that original jurisdiction lies in the appellate courts under this court's opinion in *National Cotton Council of Am. v. U.S. EPA*, 553 F.3d 927 (6th Cir. 2009).  I believe Judge Griffin's reading of that case is wrong.

In *National Cotton*, this court concluded that it had original jurisdiction to review a rule that created exemptions to the permitting procedures of the Clean Water Act (the "Act"). 553 F.3d at 933.   In holding that jurisdiction was proper, the court reasoned that "[t]he jurisdictional grant of [subsection (F)] authorizes the court of appeals 'to review the regulations governing the issuance of permits . . . as well as the issuance or denial of a particular permit.'" *Id.* at 933 (quoting *Am. Mining Cong. v. U.S. EPA*, 965 F.2d 759, 763 (9th Cir. 1992)). Therefore, the court expanded subsection (F) to cover rules that "regulate[] the permitting procedures."  *See id.*; *cf.* 33 U.S.C. § 1369(b)(1)(F) (relating to administrative actions that "issu[e] or deny[] any permit under section 1342").  I view this limited expansion of subsection (F) as the holding of *National Cotton*.

By contrast, Judge Griffin contends that *National Cotton*'s holding expanded the scope of subsection (F) to include anything "relating" to permitting procedures.  While *National Cotton* expanded the scope of subsection (F) to cover rules "*regulating*" or "*governing*" permitting procedures, 553 F.3d at 933, it did not expand that subsection to cover all rules "*relating*" to those procedures, such as the one at issue here—a rule that merely defines the scope of the term "waters of the United States."  That a rule "relates" to a permitting procedure does not mean that it "regulates" or "governs" that procedure.  Therein lies the analytical fallacy in the concurrence. Simply put, it cannot be that any rule that merely "relates" to permitting procedures—however tenuous, minimal, or tangential that relation may be—confers original jurisdiction upon this

court under subsection (F).  This could not have been the intent of the legislators who drafted seven carefully defined bases for original jurisdiction in the appellate courts—and it could not have been the intent of the *National Cotton* court itself.

Admittedly, the *National Cotton* court could have provided an explanation of what it meant by "regulations governing the issuance of permits."  *See* 553 F.3d at 933.  By not explaining this phrase, it invited much speculation about the scope of subsection (F).  For example, the Eleventh Circuit in *Friends of the Everglades v. EPA*, 699 F.3d 1280, 1288 (11th Cir. 2012), declined to extend the rationale and holding of *National Cotton* because this court failed to provide a better explanation of its reasoning.  However, *National Cotton*'s failure to define this phrase does not mean that this phrase must encompass everything.  I am reluctant to read *National Cotton* in a way that expands the jurisdictional reach of subsection (F) in an all-encompassing, limitless fashion.

In sum, *National Cotton*'s holding is not as elastic as the concurrence suggests.  If this court construes that holding to be so broad as to cover the facts of this case, that construction brings subsection (F) to its breaking point: a foreseeable consequence of the concurrence's reasoning is that this court would exercise original subject-matter jurisdiction over all things related to the Clean Water Act.  Accordingly, I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 15-3751/ 3799/ 3817/ 3820/ 3822/ 3823/ 3831/ 3837/ 3839/ 3850/ 3853/
3858/ 3885/ 3887/ 3948 / 4159/ 4162/ 4188/ 4211/ 4234/ 4305/ 4404

IN RE: UNITED STATES DEPARTMENT OF DEFENSE AND
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
FINAL RULE: CLEAN WATER RULE: DEFINITION OF "WATERS
OF THE UNITED STATES," 80 FED. REG. 37,054 (JUNE 29, 2015).

_____

> **FILED**
> Feb 22, 2016
> DEBORAH S. HUNT, Clerk

MURRAY ENERGY CORPORATION (15-3751); STATE OF OHIO, et al. (15-3799);
NATIONAL WILDLIFE FEDERATION (15-3817); NATURAL RESOURCES DEFENSE
COUNCIL, INC. (15-3820); STATE OF OKLAHOMA (15-3822); CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA, et al. (15-3823); STATE OF NORTH DAKOTA, et al.
(15-3831); WATERKEEPER ALLIANCE INC., et al. (15-3837); PUGET SOUNDKEEPER
ALLIANCE, et al. (15-3839); AMERICAN FARM BUREAU FEDERATION, et al. (15-3850);
STATE OF TEXAS, et al. (15-3853); UTILITY WATER ACT GROUP (15-3858);
SOUTHEASTERN LEGAL FOUNDATION, INC., et al. (15-3885); STATE OF
GEORGIA, et al. (15-3887); ONE HUNDRED MILES, et al., (15-3948); SOUTHEAST
STORMWATER ASSOCIATION, INC., et al. (15-4159); MICHIGAN FARM BUREAU
(15-4162); WASHINGTON CATTLEMEN'S ASSOCIATION (15-4188); ASSOCIATION
OF AMERICAN RAILROADS, et al. (15-4211); TEXAS ALLIANCE FOR RESPONSIBLE
GROWTH, ENVIRONMENT, AND TRANSPORTATION (15-4234); AMERICAN EXPLORATION
& MINING ASSOCIATION (15-4305); ARIZONA MINING ASSOCIATION, et al. (15-4404),
        Petitioners,

    v.

UNITED STATES DEPARTMENT OF DEFENSE, DEPARTMENT OF THE ARMY CORPS OF
ENGINEERS and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,
        Respondents.

Before: KEITH, McKEAGUE, and GRIFFIN, Circuit Judges.

### JUDGMENT

On Petitions for Review of Final Rule of the United States Department
of Defense and United States Environmental Protection Agency.
Judicial Panel on Multi-District Litigation, No. 135.

THIS MATTER came before the court upon the petitions for review by Petitioners and Intervenors for review of the Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015).

UPON FULL REVIEW of the record, the motions to dismiss, and arguments of counsel,

IT IS ORDERED, for the reasons more fully set forth in the court's opinions of even date, that all pending motions to dismiss are DENIED.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk